NORTH AMERICAN VAN LINES, INC., North American Van Lines of Texas, Inc., Lufkin Moving and Storage Company, and Edwin Cartagena, Appellants,

v.

Charles E. EMMONS, Ruth Murphy, Rebekah Walding, Wanda Kruse, and Ford Motor Company, Appellees.

No. 09–00–073 CV.

Court of Appeals of Texas, Beaumont.

Submitted Feb. 15, 2001.

Decided June 28, 2001.

Rehearing Overruled Aug. 9, 2001.

---

10. Tex.R.App.P. 29.5.

11. *Peters,* 651 S.W.2d at 33.

104

Mike Hatchell, Greg Smith, Eric Findlay, Maria Sowders, Ramey & Flock, P.C., Tyler, Robert T. Cain, Jr., Kenzy D. Hallmark, Paul E. White, Zeleskey, Cornelius, Hallmark, Roper & Hicks, L.L.P., Lufkin, Kevin D. Jewell, Robert H. Bateman, Steven J. Knight, Magenheim, Bateman & Helfand, P.L.L.C., Houston, for appellants.

Darrin Walker, Chandler Law Offices, Lufkin, Robert Celedonia, III, Celedonia & Klitsas, P.C., Houston, Michael W. Eady, Brown McCarroll & Oaks Hartline, L.L.P., Austin, for appellees.

Before WALKER, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

GAULTNEY, Justice.

Following a jury trial, the trial court entered a total judgment for plaintiffs of $19,858,638.08, including actual and punitive damages. No defendant challenges the amount of actual damages awarded. This appeal from that judgment presents a

veritable sea of other legal issues: legal causation, joint and several liability, negligence per se, the propriety of certain jury instructions, vicarious liability, conspiracy, alter ego status, joint enterprise, single business enterprise, preservation of error, the admissibility of expert testimony and evidence of other accidents, exemplary damages, and the sufficiency of the evidence to support the jury's findings. We affirm in part and reverse and render in part.

## THE JURY TRIAL

Charles Emmons and his three daughters [1] sued Edwin Cartagena, Lufkin Moving and Storage Company ("Lufkin Moving"), North American Van Lines, Inc. ("NAVL"), North American Van Lines of Texas, Inc. ("NaTex"), and Ford Motor Company ("Ford").[2] Cartagena and the three carriers were sued for negligence, and Ford was sued for a seat design which allegedly aggravated Emmons' injuries. The jury found Cartagena and the three carriers liable, but found no liability on Ford's part. In response to a question asking them to determine the percentage of causation attributable to each defendant, the jury assessed 5% to Cartagena, 20% to Lufkin Moving, 35% to NaTex, and 40% to NAVL. The jury awarded Emmons $10,674,092 in actual damages and awarded his three daughters $210,000, $200,000, and $100,000, respectively. The jury also assessed exemplary damages against NaTex and NAVL. This appeal was filed by Cartagena, Lufkin Moving, NAVL, and NaTex.

## THE ACCIDENT

On May 31, 1996, the date of the accident, Edwin Cartagena was driving a moving van from Lufkin, Texas, to Port Arthur, Texas. Owned by Lufkin Moving, the moving van was leased to NAVL (an interstate motor carrier) and was being used for "a NaTex shipment under [NAVL's] operating authority[.]" NaTex is an intrastate carrier and a subsidiary of NAVL.

Charles Emmons was paralyzed from the chest down when the moving van driven by Cartagena rear-ended the Ford Bronco in which Emmons was a front seat passenger. Cartagena was required by law to have a commercial driver's license to drive the van: but Cartagena had been refused a commercial driver's license because he could not meet the vision requirements; and Cartagena had failed the written exam for a commercial driver's license twice.

## ISSUES PRESENTED ON APPEAL

The four defendants appeal the jury's liability findings and the judgment which held all four jointly and severally liable for the actual damages. NAVL also appeals an exemplary damage award of $5,400,000, and NaTex appeals an exemplary damage award of $150,000. They present, overall, issues requesting rendition, remittitur, or a new trial.

## OUR HOLDING

We affirm the judgment as to actual damages for all appellees; however, because of our disposition of the issues on joint and several liability, we order the

1. Ruth Murphy, Rebekah Walding, and Wanda Kruse, daughters of Charles Emmons, were plaintiffs in the suit.

2. In their third party petition filed against Ford, appellants NAVL and NaTex claimed

the seat in the Ford Bronco was defective. After NAVL and NaTex brought Ford into the suit, the appellees amended their petition to include Ford as a defendant in the event the jury found Ford liable for appellees' damages.

judgment reformed to conform to the jury findings of the percentages of causation. We affirm the jury's finding that NAVL and NaTex are a single business enterprise with respect to their Texas operations; they are liable for each other's negligence. We also find that NAVL/NaTex is the statutory employer of Cartagena. We deny appellants' requests for a new trial.

However, we reverse the trial court's findings of joint and several liability, and we find legally insufficient evidence to support the jury findings of conspiracy, alter ego, and joint enterprise. As we also find no basis for the jury's finding of malice, we reverse the awards of punitive damages; consequently, we need not consider appellants' request for a remittitur of punitive damages or a new trial on punitive damages.

We turn next to an analysis of each issue raised by appellants and the reasons for our conclusions.

### PROXIMATE CAUSE

■ In issue one, NaTex and NAVL challenge the sufficiency of the evidence to support the jury's finding that their negligence proximately caused the accident.[3] NaTex and NAVL argue that Cartagena's vision problems and lack of a license were not causes of the accident. Therefore, they argue, even if they were negligent in allowing Lufkin Moving to assign Cartagena to drive the van, their negligence was not a proximate cause of the accident.

Essentially, NAVL and NaTex contend that Cartagena was a legally competent driver despite his lack of a driver's license and his impaired vision. Therefore, they argue there is no evidence, or factually insufficient evidence, to support the jury's finding that negligently entrusting the commercial van to him was a proximate cause of the collision. They also contend that there is no way they could have prevented Lufkin Moving from using an unqualified driver if it was determined to do so.

■ In this issue, appellants also state there was no evidence they owed any duty to Emmons. Whether an entity has a duty in particular circumstances is a question of law for the court to decide from the facts surrounding the occurrence in question. *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1990). Here, NAVL/NaTex offered no argument, authorities, or facts to support their assertion and have waived any consideration of that issue. Moreover, the record supports the legal duty. There is for example, testimony from NAVL/NaTex that they had the authority to attempt to control Lufkin Moving for "things that [were] done in [their] service," had the right to inspect records to ensure compliance with the law and with their driver requirements and safety regulations, and had the authority to discipline Lufkin Moving for violations of those requirements and to keep drivers such as Cartagena from making further hauls for them.

■ The issue appellants present in their argument to this Court is whether

---

**3.** The sufficiency standards are well-known. When reviewing a legal sufficiency point, we consider only the evidence and inferences tending to support the jury's finding, and we disregard all contrary evidence. *Wal–Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex.1998). "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Continental Coffee Prods. Co. v. Ca-* zarez, 937 S.W.2d 444, 450 (Tex.1996). In reviewing the factual sufficiency of the evidence, we examine all the evidence and will set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

there is sufficient evidence in the record to support the two elements of proximate cause: cause-in-fact and foreseeability. To be a "cause-in-fact" of the accident, appellants' acts or omissions must have been substantial factors in causing the accident, in other words, factors without which the accident would not have occurred. *See Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex.1998). The element of "foreseeability" requires a finding that a person of ordinary intelligence should have anticipated the danger created by the negligent acts or omissions. *Id.*

■ As in *Scott Fetzer Co.*, appellants' duty of care is not based solely on a notion of vicarious liability, but rather on the premise that appellants are responsible for their own actions. Appellants owed a duty of care directly to members of the driving public, including Emmons. *See generally White v. Excalibur Ins. Co.*, 599 F.2d 50 (5th Cir.1979). Was the breach of that duty a proximate cause of this accident? Appellees, in effect, alleged the lack of care by NAVL and NaTex in supervising and checking the records of their agent as the basis, in part, for NAVL/NaTex's liability; and appellants acknowledged the serious risk to the driving public presented by the failure to carefully exercise their control and, more particularly, recognized the risk of harm if unqualified drivers were used. If they had exercised their control carefully, they could have made it unlikely that an unqualified, unlicensed driver would be put behind the wheel of one of their trucks.

The jury heard testimony that it is unsafe to allow a person without a commercial driver's license to drive a commercial truck, that an unlicensed driver exposes the public to an extreme degree of risk, that a person must pass a vision test in order to get a commercial license because poor vision can impair a person's ability to

safely operate a commercial truck, and that the accident in this case could have been avoided if Cartagena had kept a proper lookout. Evidence was presented that the purpose of the licensing process is to ensure that drivers are aware of the rules, regulations, and safety issues involved in operating large commercial vehicles. The jury heard evidence that appellants knew they had a responsibility to control their agents to make sure licensed, qualified drivers were used to deliver their shipments.

■ Proximate cause is a fact issue usually left for determination by the factfinder, in this case the jury. *See Clark v. Waggoner*, 452 S.W.2d 437, 440 (Tex.1970); and *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 756 (Tex.1975); *but see Union Pump Co. v. Allbritton*, 898 S.W.2d 773 (Tex. 1995) (summary judgment based on lack of legal causation affirmed). A jury may base a finding of proximate cause solely on circumstantial evidence. *See J.K. & Susie L. Wadley Research Inst. & Blood Bank v. Beeson*, 835 S.W.2d 689, 698–700 (Tex. App.—Dallas 1992, writ denied). The jury may find that there was more than one proximate cause of an event. *DeLeon v. Pickens*, 933 S.W.2d 286, 291 (Tex.App.— Corpus Christi 1996, writ denied).

Cartagena's visual impairment and lack of skill made it foreseeable that he could not operate a moving van safely enough to avoid an accident and the jury heard evidence regarding the dangers of unqualified drivers. Because the jury heard evidence that NAVL and NaTex were aware of the risks of unqualified, unlicensed drivers (foreseeability) and had the ability to control "things that [were] done in its service" (cause-in-fact), we find that the evidence is legally and factually sufficient to support the jury's finding on both elements of proximate cause.

■ Appellants also contend that they could not prevent Lufkin Moving from using an unlicensed driver if Lufkin Moving was intent on doing so. Essentially, they argue that the conduct of Lufkin Moving was an intervening force which broke the chain of legal causation. They contend they were the victims of a fraud committed by Lufkin Moving.

■ To be a superseding cause, the intervening force must have been unforeseeable. *See Nixon v. Mr. Property Management,* 690 S.W.2d 546, 549–50 (Tex. 1985); *see generally Phan Son Van v. Pena,* 990 S.W.2d 751, 754 (Tex.1999). When the misconduct of the third party is a foreseeable consequence of the defendant's inattentiveness, the misconduct generally is not considered an intervening act. *See Hoenig v. Texas Commerce Bank, N.A.,* 939 S.W.2d 656, 660–61 (Tex.App.— San Antonio 1996, no writ) (Intentional misconduct of lessee did not relieve bank of liability for its inattentiveness because intentional misconduct was foreseeable.).

Appellants' argument fails for several reasons. Evidence was presented that the alleged fraudulent "misrepresentation"— that a qualified driver was driving the truck at the time of the accident—occurred **after** the accident. The jury heard evidence that Lufkin Moving simply **did not fill in the blank** for the driver's name on the form that should have **been completed before** the accident; the jury reasonably may have concluded that a proper exercise of control by NAVL and NaTex over Lufkin Moving would have caught this failure and resulted in an exercise of control sufficient to stop a patently unqualified driver from driving the truck (cause-in-fact). Evidence was presented from which the jury could have found that NAVL and NaTex changed their records after the accident to reflect a licensed driver was behind the wheel even after they knew that Cartage-

na was the actual driver. Such conduct reasonably may have been interpreted by the jury as a ratification or routine acceptance of the business practice. The jury found that Lufkin Moving did not commit fraud against NAVL or NaTex by making a "misrepresentation." Apparently, the jury did not believe that the conduct of Lufkin Moving was deceptive to NAVL and NaTex. This was not the first time an agent had used an unqualified, unlicensed driver to make their shipments. Evidence was presented to the jury that appellants were aware of the risk posed by falsified records and the danger inherent in unqualified, unlicensed drivers making their shipments and operating under their control. The alleged misconduct by Lufkin Moving was foreseeable.

■ Certainly NAVL and NaTex were not required to obtain a finding of fraud to break the chain of legal causation, although the issue was submitted to the jury. Plaintiffs carry the burden of proving legal causation, which the jury found they did in this case. *See Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). In finding that the negligence of NAVL and NaTex proximately caused the accident, the jury reasonably may have concluded, based on the evidence presented, that NAVL and NaTex not only failed to put adequate policies in place, but also failed to enforce those that did exist, and that, absent such conduct, the accident would not have happened. The jury heard evidence from appellants' director of safety that the wreck was preventable. There is sufficient evidence in the record to support the jury's finding that the negligent acts or omissions of NAVL and of NaTex were proximate causes, among others, of this accident. *See DeLeon,* 933 S.W.2d at 291. (A jury may conclude there was more than one proximate cause of an event). The negligence issue is overruled.

## JOINT AND SEVERAL LIABILITY

Appellants complain of the trial court's judgment holding each defendant jointly and severally liable. This case is governed by TEX.CIV.PRAC. & REM.CODE ANN. §§ 33.001–33.017 (Vernon 1997), the proportionate responsibility statute.

 Section 33.013(b) provides that in order to be held jointly and severally liable, a defendant's percentage of responsibility must be greater than 50%. TEX. CIV.PRAC. & REM.CODE ANN. § 33.013(b) (Vernon 1997). No defendant was found by the jury to have been greater than 50% responsible for the accident. Therefore, no defendant is jointly and severally liable under the statute to pay the portions of the verdict rendered against the other defendants.

Relying on legal vicarious liability and equitable veil piercing theories, however, appellees contend that the interrelationships of the appellants render them liable for each other's conduct despite the proportionate responsibility statute. The jury found the following: All four defendants were involved in a conspiracy; three of the defendants (Lufkin Moving, NaTex, and NAVL) were involved in a joint enterprise; NaTex was the alter ego of NAVL; and NAVL and NaTex operated as a single business enterprise. In addition, the jury found that the truck was being operated by or for NAVL under a lease to NAVL at the time of the accident. We address each finding.

Legal Theories

*Conspiracy*—The jury found that all four defendants were "members of a conspiracy to operate commercial motor vehicles in an unsafe manner in violation of law that proximately caused damages to Plaintiffs[.]" The jury was instructed not to answer the conspiracy question unless they found at least one of the defendants negligent. Having found the appellants negligent, the jury then found that they had engaged in a conspiracy that harmed plaintiffs.

 Appellees argue that the conspiracy finding renders the appellants vicariously liable which in turn makes them jointly and severally liable for the entire damages. However, the Supreme Court has held that "[c]ivil conspiracy is an **intentional** tort." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 617 (Tex. 1996) (emphasis added). The claims against the appellants are grounded in negligence. The Supreme Court has noted that since a conspiracy requires a "specific intent" to cause injury, "parties cannot engage in a civil conspiracy to be negligent." *See Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719–720 n. 2 (Tex.1995); *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1996) (" 'Civil conspiracy requires specific intent' to agree 'to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.' ") (quoting *Triplex Communications, Inc.*, 900 S.W.2d at 719). The finding by the jury of a conspiracy to operate unsafely is a "conspiracy to be negligent" finding. Appellees requested no submission and obtained no jury finding on the intentional tort of civil conspiracy. As a matter of law, the jury finding of a conspiracy to be negligent does not support a judgment of joint and several liability.[4]

 *Joint Enterprise*—Appellees argue that the jury's finding that NAVL, NaTex, and Lufkin Moving were engaged in a joint enterprise also supports joint and several liability of those three defendants. Appellants, on the other hand, con-

---

4. Since we hold the conspiracy finding is of no legal consequence, we need not consider

Lufkin Moving/Cartagena's issue regarding jury charge error in the conspiracy question.

tend the evidence was insufficient to support a finding of joint enterprise. Here, "joint enterprise" was defined to the jury as follows:

A "joint enterprise" exists if those concerned have (1) an agreement, either express or implied, with respect to the enterprise or endeavor; (2) a common purpose; (3) a common business or pecuniary interest; and (4) an equal right to direct and control the enterprise.

The jury instruction correctly defines a joint enterprise. *See Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 613–15 (Tex.2000). However, we find no evidence in the record to support the jury's affirmative finding regarding the fourth element of a joint enterprise, i.e., that the three parties had "an equal right to direct and control the enterprise." The equal right of control is an essential element of a joint enterprise. *See Triplex Communications, Inc.*, 900 S.W.2d at 718–19.

■■■ Where one party has overriding control over another, a joint enterprise does not exist. *See generally Shoemaker v. Estate of Whistler*, 513 S.W.2d 10, 16 (Tex.1974). For example, an employer/employee relationship generally does not qualify as a joint enterprise, because the employer controls the employee. *See Esquivel v. Murray Guard, Inc.*, 992 S.W.2d 536, 542 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). Similarly, an agency relationship requires by definition that one be under the control of another. *See Daily Int'l Sales Corp. v. Eastman Whipstock, Inc.*, 662 S.W.2d 60, 64 (Tex. App.—Houston [1st Dist.] 1983, no writ).

■■■ Here, all four appellants argue that a principal/agent relationship existed between NAVL and Lufkin Moving and also between NaTex and Lufkin Moving. They note, correctly, that both contracts affirmatively state that the relationships are principal/agent relationships. The written contract of the parties generally determines the nature of the relationship, i.e., whether it is a relationship based on joint venture, a partnership, or principal/agent. *See Coastal Plains Dev. Corp. v. Micrea, Inc.*, 572 S.W.2d 285, 287 (Tex. 1978). Where a contract is unambiguous, the question of the relationship's nature is a question of law. *See Edwards v. Lone Star Gas Co.*, 782 S.W.2d 840, 841 (Tex. 1990); *see also Esquivel*, 992 S.W.2d at 542. Here, the contract between NAVL and Lufkin Moving unambiguously establishes a principal/agent relationship, with NAVL having the superior right of control. The relationship between NAVL and Lufkin Moving was not a joint venture. *See Triplex Communications, Inc.*, 900 S.W.2d at 718–719.

The NaTex/Lufkin Moving contract likewise reveals a principal/agent relationship. Contained in the contract is a specific list of duties to be carried out by the agent (Lufkin Moving) on behalf of NaTex. Such duties include, but are not limited to, the following: "Solicit[ing] and procur[ing] business for and in behalf of [NaTex]"; providing labor for NaTex as may be required; aiding NaTex in investigating and adjusting claims; furnishing NaTex with accessorial services; acting as local or regional representative; acting as custodian and depository of records; and booking shipments for transportation and servicing by NaTex. The contract between NaTex and Lufkin Moving expressly limits the principal/agency relationship to those activities detailed therein. Nowhere in the contract is Lufkin Moving given an equal right of control; to the contrary, the contract unambiguously establishes the relationship as one of principal/agent. Because we conclude the contracts are unambiguous and we find no evidence in the record of equal right of control among the three parties (NAVL,

NaTex, and Lufkin Moving), we hold the evidence is legally insufficient to support the jury finding that NAVL, NaTex, and Lufkin Moving all operated as a joint enterprise.

▪ *The Lease*—NAVL argues that it cannot be held liable under its lease for Lufkin Moving's or Cartagena's negligence, because Lufkin Moving, the owner of the truck, leased it to NAVL exclusively for use in interstate shipments; the shipment in question was intrastate. According to NAVL and NaTex, federal regulations require NAVL to assume responsibility for Lufkin Moving's truck during NAVL's interstate shipments, thus making the driver NAVL's statutory employee only to that extent. They further argue that the regulations permit the parties to agree that the lessee (NAVL) will be responsible for the truck and driver only while the lessor (Lufkin Moving) is hauling goods for the lessee (NAVL). NAVL contends that the lease has unambiguous language to this effect and since the trial court was required to interpret it accordingly as a matter of law, the jury should not have been asked to interpret the provision of the lease dealing with that issue.

Federal regulations require the lease agreement to "provide that the authorized carrier lessee [NAVL] shall assume complete responsibility for the operation of the equipment for the **duration of the lease.**" 49 C.F.R. § 376.12(c)(1) (1997) (emphasis added). However, section 376.12(c)(3) allows for an exception. An authorized carrier of household goods and the lessor "may provide in the lease that the provisions required by [section 376.12(c)(1) ] apply **only during the time the equipment is operated by or for the authorized carrier lessee.**" (emphasis added). Here, the lease did just that by providing that the Company [North American] "assumes responsibility as a common carrier

by motor vehicle to shippers and the general public **with respect to operation of the aforesaid vehicular equipment for Company.**" (emphasis added).

▪ This language, which serves to limit NAVL's responsibility, was not the portion of the lease submitted to the jury. The sentence actually submitted for the jury's interpretation was as follows: "Company and Agent agree that said vehicular equipment may be used by, for, and in behalf of Agent when same is not being operated for Company." In contrast to the portion of the lease where NAVL "assumes responsibility ... **with respect to operation of the aforesaid vehicular equipment for Company,**" the sentence submitted to the jury simply allows Lufkin Moving to use the equipment when it is not being operated for NAVL. (emphasis added). When asked if that specific language limited NAVL's responsibility, the jury understandably answered "No." However, the answer is not dispositive of the parties' intent even if the question of intent was properly submitted, because the issue did not submit the controlling portion of the lease.

However, whether the portion of the lease language submitted for the jury's interpretation was complete, relevant, clear, or ambiguous is of no consequence. The jury found in answer to Question 4 that the truck was "being operated by or for NAVL at the time of the occurrence in question." This finding renders moot the interpretation of the excerpt from the contract asked about in Question 3 and is consistent with the jury finding in Question 2. Neither NAVL nor NaTex has appealed the jury's finding in response to Question 4. This finding of fact is not dependent on, and therefore not tainted by, Question 3. There is sufficient evidence, independent of the jury's interpretation of the contract, to support a jury

finding that the truck was being operated by or for NAVL at the time of the accident. Under the unambiguous language of the lease, NAVL assumed complete responsibility for the operation of the truck when it was being used "by or for" NAVL.

Equitable Doctrines

*Alter Ego*—The jury found that NaTex was the alter ego of NAVL; and the jury also found that the two companies operated as a single business enterprise. Appellees argue that these findings make the two companies jointly and severally liable for each other's percentage of causation as found by the jury. Appellants argue there is no evidence that would allow piercing of the corporate veil, and that, in the absence of such evidence, the trial court should have ignored both the finding of "alter ego" and the finding of "single business enterprise." Since the two theories are distinct, we will analyze them separately.

■■■■ "Alter ego" and "single business enterprise" are not synonymous; they are separate and distinct equitable theories, although similar in purpose. *See Aluminum Chems. (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 68 (Tex.App.—Texarkana 2000, no pet. h.). The alter ego doctrine is applied to disregard the corporate fiction when there is such unity between a corporation and its subsidiary that the separateness of the latter has ceased and holding only the subsidiary liable would lead to injustice. *See Harwood Tire–Arlington, Inc. v. Young*, 963 S.W.2d 881, 885 (Tex.App.—Fort Worth 1998, writ dism'd by agr.). The single business enterprise is an equitable doctrine applied to reflect partnership-type liability principles when corporations integrate their re-

sources and operations to achieve a common business purpose. *See Aluminum Chems. (Bolivia), Inc.*, 28 S.W.3d at 68.

■■■■ One important distinction between the two is that the "alter ego" theory generally involves proof of fraud, i.e., proof that the corporation is organized and operated as merely a tool or business conduit of another corporation. *See id.* at 67; *see also Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex.1986).[5] At a minimum, "[t]he plaintiff must prove that he has fallen victim to a basically unfair device by which [the subsidiary] has been used to achieve an inequitable result." *See Lucas v. Texas Indus., Inc.* 696 S.W.2d 372, 375 (Tex.1984). To recover under a finding of a single business enterprise, no proof of fraud is required; instead, the single business enterprise theory relies on equity analogies to partnership principles of liability. *See Aluminum Chems. (Bolivia), Inc.*, 28 S.W.3d at 68.

■■■ Here, both theories, alter ego and single business enterprise, were submitted to the jury and the jury answered both questions affirmatively. The appellants argue that the evidence was legally insufficient because there was no evidence of two claimed essential elements of the two veil-piercing theories. First, NAVL/NaTex argue there is no evidence that the subsidiary (NaTex) is presently incapable of compensating the plaintiffs; next, they argue there is no showing that the parent corporation (NAVL) used the corporate fiction unfairly or to further a wrong.

■■■ Evidence that a subsidiary is not reasonably capitalized in light of the nature and risk of its business is a factor

---

**5.** *Castleberry* was overruled by article 2.21(A)(3) of the Texas Business Corporation Act, at least to the extent that failure to observe corporate formalities is no longer a factor in proving alter ego. *See* Act of May 7, 1993, 73d Leg., R.S., ch. 215, § 2 .05, 1993 Tex. Gen. Laws 418, 446 (current version at Tex. Bus. Corp. Act Ann. art. 2.21 (Vernon Supp.2001)).

which weighs in favor of veil-piercing. *Lucas*, 696 S.W.2d at 375. In this case there was evidence that NaTex was insufficiently capitalized in light of the foreseeable risk of major highway accidents such as this one. The jury heard testimony that NaTex is a wholly-owned subsidiary of NAVL and that NaTex has one office, and seven employees, owns no trucks, and turns over all its profits to NAVL. However, control is part of the normal framework of a parent/subsidiary relationship, and blending of corporate activities is insufficient to show that the subsidiary is an alter ego of the parent. *See Lucas*, 696 S.W.2d at 376; *see also Trailways, Inc. v. Clark*, 794 S.W.2d 479, 489–90 (Tex.App.—Corpus Christi 1990, writ denied). As we have noted, courts usually decline to hold that a subsidiary is the alter ego of a parent unless the corporate entity of the subsidiary is a sham being used to commit a fraud, avoid financial responsibility, or break the law. Exceptional circumstances are required to invoke this remedy. *See Lucas*, 696 S.W.2d at 374–375. We do not find such circumstances in the record. We hold that the evidence is insufficient to support the jury's finding of alter ego status.

◼◼◼ *Single Business Enterprise*— As noted above, the single business enterprise theory differs from the alter ego theory in that no showing of fraud is required; when two corporations are not operated as separate entities but instead integrate their resources to achieve a common business purpose, it may be equitable, under exceptional circumstances, to hold each constituent corporation liable for the debts and liabilities incurred in the common enterprise. *See Paramount Petroleum Corp. v. Taylor Rental Ctr.*, 712 S.W.2d 534, 536–37 (Tex.App.—Houston [14th Dist.] 1986, writ ref. n.r.e.); *Old Republic Ins. Co. v. Ex–Im Servs. Corp.*, 920 S.W.2d 393, 395–396 (Tex.App.—Houston [1st Dist.] 1996, no writ). The single business enterprise doctrine does not require proof of all the elements of a true joint venture or partnership; rather, it is a doctrine founded in equity. Equal right of control is not required, for example, because the doctrine does not try to determine whether a true joint venture has been established. The doctrine looks to see if principles of equity support a holding that the two entities should be treated as one for purposes of liability for their acts.

◼◼◼ In accordance with case law, the jury was properly instructed on the single business enterprise theory: "Two corporations are operated as a single business enterprise if they are not operated as separate entities, but rather integrate their resources to achieve a common business purpose." The jury was also properly instructed on the factors to be considered in making their determination as those factors were set out in *Paramount Petroleum*. *See* 712 S.W.2d at 536–37; *see also Hall v. Timmons*, 987 S.W.2d 248, 252 (Tex.App.—Beaumont 1999, no pet.).[6] Since appellants attack the jury finding only on the ground of legal sufficiency of the evidence, we will uphold the finding if

---

**6.** Unlike the jury instruction given in *George Grubbs Enterprises, Inc. v. Bien*, 900 S.W.2d 337, 338–339 (Tex.1995), here the jury properly was instructed to consider the factors listed in *Paramount Petroleum:* whether NAVL and NaTex had common employees and common offices and utilized centralized accounting; whether one corporation paid the wages of the other's employees; whether they utilized common business names; whether the employees of one corporation rendered services on behalf of the other corporation; whether there were undocumented transfers of funds between the two corporations; and whether there was unclear allocation of profits and losses between the two corporations.

there is any evidence of probative value to support it. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

The evidence in this case supports the jury's finding that NAVL and NaTex ran their Texas operation as a single business enterprise. With one exception, all the officers of NaTex were also officers of NAVL and everyone that worked at Na-Tex had a corresponding co-employment with NAVL. The one employee that did not also work for NAVL was hired by NAVL and could be fired by NAVL. Na-Tex was created so that NAVL's agents in Texas "could pool their authority and create a broader coverage in the State."

NAVL described its relationship with its agents as "a mutually dependent enterprise" and a cooperative enterprise with shared goals and "shared responsibility." NAVL received all of the profits of NaTex. On May 31, 1996, the date of the accident, Edwin Cartagena, Lufkin Moving's employee, was wearing a NAVL uniform for a purported NaTex haul. NAVL performed essential administrative functions for Na-Tex, such as investigating accidents, approving, contracting with, and developing standards for NaTex's agents, operating a safety department, qualifying drivers, setting quality standards, and enforcing standards. NAVL's accident report described the driver, Cartagena, as a "NAVL driver."

We hold that there was sufficient evidence for the jury to find that NAVL and NaTex were operated as a single business enterprise. If the truck was being operated by or for NAVL, it was also being operated by or for NaTex; the reverse would also be true because they are a single business enterprise. The legal effect of the jury findings is that the single business enterprise consisting of NAVL and NaTex was the statutory employer of Cartagena at the time of the accident.[7]

### THE PROPORTIONATE RESPONSIBILITY STATUTE

NaTex and NAVL argue that they cannot be held liable for each other's negligence under the single business enterprise doctrine because of the Texas legislature's replacement of common-law apportionment in personal injury cases with the proportionate responsibility statute. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 33.013(a) (Vernon 1997); *see C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315 (Tex.1994). However, the single enterprise doctrine is not a common-law tort to which the proportionate responsibility statute applies; it is an equitable doctrine which treats two interrelated corporations as one under partnership-type principles.

We decline to interpret the statute to lead to illogical conclusions when it is subject to a more reasonable interpre-

---

7. Congress has enacted legislation which imposes both a legal right and a legal duty on a motor carrier to control vehicles operated for its benefit. *See White v. Excalibur Ins. Co.*, 599 F.2d 50, 52–53 (5th Cir.1979). Therefore, "the employees of the vehicle-lessor are deemed statutory employees of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles." *Id.* at 53.

Although Lufkin Moving, Cartagena's employer, was designated as an agent and independent contractor in the contracts with NAVL and NaTex, that designation is not determinative. In amending the Interstate Motor Common Carrier Act in 1956, the very purpose of Congress was to deal with motor carriers' efforts to designate those who drove trucks for them as "independent contractors" in order to immunize themselves from liability. *White*, 599 F.2d at 52. Since NAVL and NaTex are to be treated as one entity (a single business enterprise), that entity was the statutory employer of Cartagena and is vicariously liable for his negligence.

tation. *See id.* at 322 n. 5. The proportionate responsibility statute did not do away with the application of partnership and agency theories, nor did it replace equitable doctrines imposing liability on one corporation for the acts of another. Holding each component of a single business enterprise liable for all members' acts of negligence is analogous to holding one partner liable for the acts of a partnership. We overrule this issue to the extent it asks us to hold that NAVL and NaTex are not liable for each other's acts. However, pursuant to the provisions of section 33.013, we decline to merge the jury findings for the purpose of holding NAVL and NaTex jointly and severally liable for the entire judgment under the terms of the statute. The equitable doctrine of single business enterprise operates separately from the express terms and applicability of the statute.

▪▪▪ Like NAVL and NaTex, Lufkin Moving and Cartagena assert that the trial court's judgment holding them jointly and severally liable is wrong because it is contrary to the proportionate responsibility statute. Since each was found less than 50% responsible, they cannot be held jointly and severally liable under the statute. *See* § 33.013(b). As we have set aside the jury findings of conspiracy and joint enterprise, there is no other basis for holding them liable for damages beyond the percentage of liability assigned to them by the jury. The jury was not asked whether they were part of the single business enterprise operated by NAVL and NaTex. There is no basis to support the trial court's judgment imposing joint and several liability on Cartagena and Lufkin Moving.

However, it is undisputed that Cartagena was in the course and scope of his employment for Lufkin Moving. Lufkin Moving is, therefore, vicariously liable for his 5% negligence in addition to its own direct liability. NAVL and NaTex are vicariously liable for the negligence of their statutory employee, Cartagena.

THE *CROWN* ISSUE

Appellants present several objections to the broad form negligence question submitted to the jury in Question 5. Appellants argue that the question was defective in three respects: 1) it erroneously instructed the jury that violations of any federal regulation created negligence *per se* despite the fact that the wreck occurred during an intrastate transfer; 2) the instruction erroneously allowed the jury to find an interstate carrier—NAVL—negligent *per se* based on the Texas Transportation Code, which, according to appellants, is not applicable to interstate travel; and 3) the right of control instruction erroneously stated that **both** NAVL and NaTex had a legal right of control over Cartagena and Lufkin Moving if **either** had some control over Lufkin Moving. Citing the recent Supreme Court decision in *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex.2000), appellants ask that the entire case be reversed and remanded for a new trial. Appellees respond that the instructions were not defective and that any error was waived.

▪▪▪ We reject the waiver argument since appellants timely objected on the grounds they now assert on appeal. We start our analysis of the objections with a review of *Crown*. The Supreme Court held in *Crown* that "submitting invalid theories of liability in a single broad form jury question is harmful error when it cannot be determined whether the jury based its verdict on one or more of the invalid theories." *Id.* at 381. We must determine whether the broad-form negligence issue submitted invalid theories of liability; and if it did, we must determine—if possible—

whether the jury nevertheless based its verdict on a valid theory.

■ If an invalid theory is submitted, the error may be harmless if we can determine that the jury did not base its verdict on the invalid theory but rather on a valid theory. *Id.* at 388–89. An appellate court may consider the jury's answers to other issues in determining whether the error is harmless. *See id.* at 389. The most significant jury answers to other issues we consider are the jury's finding that the moving van was being used by or for NAVL at the time of the accident and the jury's finding that NAVL and NaTex are a single business enterprise. We first consider whether invalid theories were submitted.

1) *The application of federal regulations to an intrastate move:* It appears uncontroverted that Cartagena was delivering an intrastate shipment—i.e., one that did not cross state lines—at the time of the wreck. The sixth and seventh paragraphs of Question 5 instruct the jury that a violation of any of several federal motor carrier safety regulations constitutes negligence *per se* on the part of NAVL/NaTex. Appellants claim that the application of these rules to an intrastate move is erroneous and mandates reversal under *Crown.* We disagree.

■ The federal regulations, paraphrased in Question 5 and referenced hereafter, are all drawn from Title 49 of the Code of Federal Regulations: (a) 49 C.F.R. § 383.23 (1992), which requires the drivers of commercial vehicles to possess a commercial driver's license; (b) 49 C.F.R. § 395.8 (1998), which requires motor carriers to have their drivers log their driving and duty hours according to a specified format; and (c) 49 C.F.R. § 390.11 (1988), which requires that motor carriers have their drivers comply with federal regulations, including the two cited previously.

Section 3.62(a) of Title 37 of the Texas Administrative Code explicitly incorporates sections 390 and 395 of the Code of Federal Regulations, including the subsections above. *See* 37 Tex.Admin.Code § 3.62(a) (1996). Section 383.23 of the Federal Regulations simply states that "no person" shall operate a commercial vehicle without having taken and passed written and driving tests that comply with federal standards; the regulation's language does not confine this prohibition to interstate trucking. *See* § 383.23. Subject to certain exceptions not applicable here, the regulations in Section 383 apply to both interstate and intrastate commerce. *See* 49 C.F.R. § 383.3 (1997). Thus, all three federal regulations in Question 5 are generally applicable to intrastate moves such as this one.[8] The trial court committed no error in instructing the jury that the appellants were bound by these regulations.

■ Section 3.62(d)(4) exempts drivers who are traveling within a 150 air-mile radius of their workplace from log-keeping requirements; this move—from Lufkin to Port Arthur—may have been within this radius. Appellants imply that this provision renders Question 5 erroneous, despite Texas's incorporation of 49 C.F.R. § 395.8 into the Texas Administrative Code.[9]

---

8. Section 3.62(a),(b)(3) of the Texas Administrative Code provides that certain terms, specifically "interstate or foreign commerce" as used in Parts 382, 385, 386, 390–393, and 395–397 of the Code of Federal Regulations, "will include all movements by motor vehicles, both interstate and intrastate, over the streets and highways of [Texas]."

9. Section 395.1(e) exempts a driver from the log requirement mandated by section 395.8 if the "driver operates within a 100 air-mile radius of the normal work reporting location[.]"

NAVL /NaTex preserved this error by timely objecting to Question 5's paraphrase of section 395.8. Interestingly, there is no evidence in the record that the exemption applied. Even if we take judicial notice that this move fell within the 150 air-mile radius, the exemption in section 3.62(d)(4) is nonetheless contingent upon an employer's keeping detailed records of a driver's hours of service on a regular basis, or upon the employer's requirement that drivers on such trips return to their work location and be released from work within twelve consecutive hours. *See* § 3.62(d)(4),(e)(3). There is no evidence appellants met either requirement.

■ 2) *The application of Texas regulations to an interstate carrier (NAVL):* The Texas regulations paraphrased in Question 5 are those which simply apply section 383.23's requirement of a commercial driver's license to operate a commercial vehicle, and section 383.37's prohibition against an employer's knowingly allowing a person without a commercial driver's license to drive a commercial vehicle. Section 383.3 of the federal regulations expressly states that "rules in this part [including section 383.23] apply to every person who operates a commercial motor vehicle (CMV) in interstate, foreign, or intrastate commerce, to all employers of such persons, and to all States." Since federal regulations make these rules applicable to all motor carriers, intrastate or interstate, the trial court did not err in instructing the jury that they were applicable to the defendants. Also, since we have affirmed the jury's finding that NAVL and NaTex were acting as one business enterprise, there is no error in holding the single business enterprise responsible for compliance with Texas regulations during intrastate shipments.

3) *The "right of control" instruction:* Appellants also contend that the right of control instruction contained in the fourth paragraph of Question 5 misstates the law and effectively "eliminat[es] the legal requirements for avoiding the corporate fiction and [thereby] virtually direct[ed] a verdict [for] the [appellees'] veil-piercing theories." Presumably, this contention is based on the phrases in the charge which told jurors the following:

> You are instructed that NAVL **and/or** NaTex had a "right of control" if **either or both** of them retained some control over the manner in which Lufkin performed the work.... NAVL **and/or** NaTex had a "right of control" if **either** of them retained the power ... to forbid the work being done in a manner likely to be dangerous to Lufkin's employees or others. (emphasis added).

This paragraph treats NAVL and NaTex as separate entities, as is shown by the references to "either" and "and/or both." It does not assume that they were a single enterprise, nor does it instruct jurors to make such an assumption. The instruction contains no substantive error.

Moreover, the jury had already found in answer to Question 4 that the van was being operated "by or for NAVL" at the time of the wreck. The jury's finding in Question 4 that the van was being operated by or for NAVL at the time of the wreck is not challenged on appeal; we accept it as true. We have affirmed the jury's finding that NAVL and NaTex operated as a single business enterprise, with each liable for the other's conduct. Based on these separate findings of fact, we can confirm that the jury's finding was based on a valid theory of recovery.

Cartagena and Lufkin Moving say only that they "join in and adopt" the NAVL/NaTex briefing of the *Crown* issues. They do not articulate any way in

which they were harmed by the form or substance of Question 5. To the degree that the issues discussed here apply to them, they have simply adopted the arguments which we have rejected.

### EVIDENCE OF OTHER ACCIDENTS

NAVL and NaTex ask for a new trial because of the allegedly improper admission into evidence of prior accidents involving NAVL truck drivers. They argue the evidence was hearsay, irrelevant, and unfairly prejudicial. Appellees contend that the circumstances of the other accidents were substantially similar to the accident here and thereby probative of the issue of the foreseeability of unqualified drivers and falsified logs—being used by agents under NAVL's control—resulting in accidents. Appellees also assert that the evidence shows a conscious disregard for safety and further argue that NAVL had fair warning that it had a serious problem with unqualified drivers and falsified records. At trial, defendant Lufkin Moving urged the admission of the evidence of other accidents (which did not involve Lufkin Moving) in response to NAVL's charge that Lufkin Moving committed fraud by using an unlicensed driver and later misrepresenting that fact—apparently on the basis that whatever Lufkin Moving did should not have been a surprise to NAVL because other agents did the same thing.

■ Proof of substantially similar accidents may be admissible if relevant to contested issues. See *McEwen v. Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 29 (Tex. App.—San Antonio 1998, pet. denied). Past accidents of the same type which plaintiffs claim should have been guarded against may suggest that a defendant should have foreseen the possibility of the accident at issue; evidence of substantially similar accidents has been held relevant to such issues as the defendant's knowledge

of a dangerous condition. See *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 340–44 (Tex.1998). The less similar the accidents, however, the less probative the evidence.

■ We believe the evidence of other accidents here is probative of the issue of whether NAVL was aware or should have been aware of the need to exercise care to assure that its agents were not using unqualified, unlicensed drivers or falsifying records. However, we also conclude some of the evidence was not sufficiently probative to permit its admission in the face of an objection that the probative value was substantially outweighed by the danger of unfair prejudice to NAVL. See TEX.R. EVID. 403. We find some of the evidence troubling in this case because it was hearsay presented through an expert witness who had also been involved in the litigation resulting from the other accidents. The evidence the witness presented in one instance was of a mother watching her children burn to death in a vehicle struck by a NAVL truck—evidence obviously calculated to stir the emotions of the jurors. NAVL was put in the unfair position of either not responding to the evidence of other accidents or, in effect, re-litigating the facts or merits of its defense in each of the other cases. We believe the trial court erred in admitting the evidence of other accidents in the manner submitted.

■ The question we must next answer is whether the admission of this evidence requires reversal and a new trial. The standard of review for reversible error in admission of evidence is strict. The Supreme Court has held that errors in admitting evidence are not reversible unless the improperly admitted evidence controlled the judgment and is not cumulative of other properly admitted evidence. *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). In *Gee*, the Court

instructed that "we must review the entire record to determine whether the judgment was controlled by the testimony that should have been excluded." Our review of the record leads us to believe that the judgment was not controlled by the evidence of other accidents. Simply put, there is considerable other evidence, as described in this decision, to support the jury's finding of negligence by NAVL/NaTex which proximately caused the accident, and the trial was not diverted significantly, or the judgment controlled, by the testimony concerning other accidents. The record contains substantial other evidence that the consequences of their negligence were foreseeable. We decline to require a new trial in this case based on the error in admitting the evidence of other accidents.

### THE JURY'S ALLOCATION OF RESPONSIBILITY

NAVL and NaTex attack the jury's allocation of responsibility among the four defendants. They argue that it defies logic to hold the negligent driver 5% responsible, the negligent truck owner and employer 20% responsible, and yet assess 35% and 40% responsibility respectively to NaTex and NAVL.

 The jury is given wide latitude in performing its sworn duty to serve as factfinder in allocating responsibility for an accident pursuant to TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (Vernon 1997). Even if the evidence could support a different percentage allocation of responsibility, an appellate court may not substitute its judgment for that of the jury. See Samco Properties, Inc. v. Cheatham, 977 S.W.2d 469, 478 (Tex.App.—Houston [14th Dist.] 1998, pet. denied). The jurors in this case heard evidence over approximately two weeks, had the opportunity to assess the credibility and demeanor of the parties and witnesses, and were in a much better posi-

tion than this Court to judge the strengths and weaknesses of each party's evidence. Even if this Court may think a different allocation is more reasonable, we will not disturb the jury findings and remand this case for a new trial unless we find that there is insufficient evidence to support the findings.

If one views the liability of NaTex and NAVL as being indirect or vicarious, it may seem illogical to hold them at greater responsibility than the negligent driver. However, the jury reasonably may have approached the allocation of causation in other ways. Rather than focusing only on the actions that occurred shortly before the accident, the jury may have focused on those who had the greatest responsibility for an unlicensed, unskilled driver being behind the wheel of a commercial van in the first place. The jury found each defendant negligent. As an employee, Cartagena was assigned by Lufkin Moving to drive the van; he complied with that instruction. The jury also heard evidence from which they could have concluded that NaTex and NAVL had greater control over their shipments than Lufkin Moving. Based upon that evidence, the jury reasonably could have determined that the parties who were in the best position to have prevented this accident were those that had the most control over who was placed behind the wheel; the jury reasonably could have concluded that NAVL and NaTex were in control of their shipments.

While we may have a different view of the proper assessment of responsibility and may not agree with the factual conclusion that NAVL and NaTex were necessarily in the best position to prevent this particular accident from occurring, we cannot say that there is insufficient evidence to support the jury's findings and allocation of responsibility. As we noted in our review of the evidence under our analysis

of the proximate cause issue, the jury heard evidence from defendants' witnesses that the accident was preventable. Appellees' principal argument against NaTex and NAVL is that the two carriers were negligent in failing to put policies in place and in failing to enforce those that already existed, and that this negligent exercise of control was the primary reason an unlicensed, unskilled driver was involved in a rear-end collision while hauling their shipment. We do not find error in the jury's allocation of responsibility.

### MALICE AND PUNITIVE DAMAGES

The jury found that Cartagena, NAVL, and NaTex acted with malice and assessed $5,400,000 in punitive damages against NAVL and $150,000 against NaTex. The jury assessed no punitive damages against Cartagena; they were not asked to do so. These three appellants contend that the jury's findings of malice are insupportable.

■ Texas law regarding punitive damages is codified in Chapter 41 of the Texas Civil Practices and Remedies Code. The Code limits punitive damages in common law tort actions to cases where the plaintiff has proven fraud or malice by "clear and convincing evidence." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 41.003 (Vernon 1997). Chapter 41 defines "clear and convincing" as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(2) (Vernon 1997). "Clear and convincing evidence" is an intermediate burden of proof, less than "beyond a reasonable doubt" but greater than the usual standard in civil cases of "preponderance of the evidence." *State v. Addington,*

588 S.W.2d 569, 570 (Tex.1979); *see also Leal v. Texas Dep't of Protective & Regulatory Servs.,* 25 S.W.3d 315, 319 (Tex. App.—Austin 2000, no pet.).

Chapter 41 contains two definitions of "malice," the second of which [10] is set out below:

"Malice" means:

. . . .

(B) an act or omission:

(i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety or welfare of others.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(7)(B) (Vernon 1997). This is the definition which was presented to the jury in Question 15.

■ Chapter 41's second definition of malice, like its common law ancestor "gross negligence," consists of two prongs: Part one describes what Texas courts refer to as the objective prong, and part two defines the subjective prong. *See Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322, 325–26 (Tex.1993). Malice involves more culpable conduct than ordinary negligence with respect to both elements. *Id.* Objectively, the defendant's conduct must involve an extreme risk of harm, a threshold significantly higher than the objective reasonable person test for negligence. *Id.* at 326. Subjectively, the defendant must have actual awareness of the extreme risk

10. Section 41.001(7)(A) also defines malice as "a specific intent by the defendant to cause substantial injury to the claimant." This definition of malice was not alleged by the appellees and was not submitted to the jury.

created by the conduct. *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 22 (Tex. 1994).

■■■ For a finding of malice to be sustained on appeal, legally sufficient evidence "must show **both** that the act was likely to result in serious harm **and** that the defendant was **consciously indifferent** to the risk of harm." *Id.* (emphasis in original); *see also Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998). Evidence of simple negligence alone is not enough to establish gross negligence—or, here, the second statutory definition of malice. *See Moriel,* 879 S.W.2d at 21–23. We hold that while the evidence of simple negligence against NaTex and NAVL is ample, the evidence does not support a finding of malice and therefore does not support the award of punitive damages. We explain further.

■■■ *Cartagena:* We begin by examining Cartagena's driving at the time of the wreck. We must determine whether his negligence created the extreme degree of risk required by the statute. We hold that it did not. Cartagena was not driving appreciably faster than other vehicles on the highway, and a witness noticed nothing erratic or unusual about his driving before the collision. The horrific injury which Gene Emmons suffered may have made it seem obvious to jurors that, in hindsight, Cartagena's driving created an extreme risk; but we are told not to use such hindsight when applying the objective prong of the statutory test. In *Moriel,* the Supreme Court explained as follows:

> Determining whether an act or omission involves extreme risk or peril requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, **without viewing the matter in hindsight.** In every negligence or gross negligence case, some injury has

allegedly occurred. However, the magnitude of the injury may be entirely disproportionate to the riskiness of the behavior.... If somebody has suffered grave injury, it may nevertheless be the case that the behavior which caused it, viewed prospectively and **without the benefit of hindsight,** created no great danger. In such a case, punitive damages are not appropriate.

*Moriel,* 879 S.W.2d at 23. (emphasis added).

Cartagena's failure to observe that the Bronco had stopped was careless and had tragic consequences. However, behavior that is merely thoughtless or careless is not malicious or grossly negligent. *Id.* at 22. His getting behind the wheel in the first place was in response to his employer's instructions. He was an experienced driver. Cartagena's driving itself, viewed objectively and without the benefit of 20–20 hindsight, did not rise to the level of extreme risk required by section 41.001(7)(B). We reverse the finding of malice against Cartagena as not being supported by legally or factually sufficient evidence.

■■■ *NAVL/NaTex:* Any finding of malice against NAVL and NaTex is based either on a notion of vicarious liability or on appellees' allegations of systemic corporate indifference to safety. We have concluded the finding of malice against Cartagena is not supported by the evidence; consequently we need not consider whether NAVL and NaTex are somehow vicariously liable through Cartagena for punitive damages. As stated above, although there is sufficient evidence to justify the finding of simple negligence, the evidence presented regarding corporate indifference to safety is not sufficient to support a finding of malice by clear and convincing evidence.

Much was made at trial and on appeal of a NAVL representative's statement to a gathering of NAVL agents that "[t]his year we only killed eight people, which is an improvement." Appellees suggest that this was a flippant comment exemplifying NAVL's callousness to the safety issues inherent in operating a fleet of commercial vehicles. Since this comment appears out of context, it is impossible to discern whether it was intended as it is characterized. The witness who reported the statement explained that, although he was initially shocked by the statement, he later realized it may have been the speaker's method of speaking with candor about serious issues. In either case, we believe it has no probative value as to either the objective or subjective prongs of the statutory definition of malice.

The criticisms and recommendations offered by two outside safety consultants hired by NAVL are proffered as evidence that NAVL knew of, and ignored, safety problems; but the fact that a corporate defendant hired outside consultants in hopes of improving its safety performance is not probative of the contention that it is consciously indifferent to extreme risks. In addition, NAVL offered testimony to the effect that it had acted on the recommendations contained in the reports. Brent Greek, NAVL's safety director at the time of the wreck, testified that NAVL had implemented most of the recommendations in a 1990 report by the time he took office in 1993. Greek offered further uncontroverted testimony that NAVL had a 30% improvement in its accident record from 1993 to 1998, as measured by the number of accidents reportable to the Department of Transportation. The evidence does not demonstrate that NAVL/NaTex acted with malice.

The flaws in NAVL's supervision of Lufkin Moving do not meet either prong of the test for malice. Appellees did not produce legally sufficient evidence demonstrating that Lufkin Moving's operations created an extreme risk to the public. The jury's finding of malice on the part of NAVL and NaTex is not supported by clear and convincing evidence. We therefore need not consider appellants' request for a punitive damage remittitur.

### EVIDENCE OF INSURANCE

Because we have set aside the punitive damage awards, we need not consider NAVL's and NaTex's objection to the admission of testimony in the punitive damage phase suggesting the existence of insurance. If we were to sustain this challenge, the remedy would be a new trial. Since we have already determined that appellees are not entitled to punitive damages, it is not necessary to consider appellants' alternative request for a new trial on punitive damages.

### THE *ROBINSON* ISSUE

■ NAVL and NaTex contend that the trial court abused its discretion in admitting a computer animation through the testimony of Carl Savage, an engineer who testified on behalf of Ford.[11] While Savage's credentials as a crash worthiness expert are substantial, appellants contend that a computer animation illustrating his testimony did not meet *Robinson* standards of scientific reliability, and that admission of the evidence caused the rendition of an improper verdict. *See E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex.1995). We find that NAVL and NaTex waived their objections to this evidence.

11. Lufkin Moving and Cartagena adopted NAVL/NaTex's brief on the *Robinson* issue.

NAVL and NaTex claim the Ford Bronco seat was defective and the defect contributed to Emmons' injuries. Savage believes that during the first few seconds, the rear seat struck Emmons in the back of the head and neck, but he opined that the collapse or "yielding" of Emmons' seat occurred after the spinal fracture and did not contribute to Emmons' injuries.

Savage disclosed this opinion during pre-trial deposition testimony, and the trial court denied NAVL's motion to exclude his testimony. At trial, Savage was asked for, and gave, this opinion without timely objection. However, appellants did object to the admission of two computer-generated animations and still pictures of the computer animation—all intended to depict Savage's testimony and version of events. The trial court admitted them all. NAVL contends that the animation gave exaggerated emphasis to an educated guess on Savage's part, in violation of the Supreme Court's holding that expert testimony cannot rely on "possibility, speculation and surmise." *See Merrell Dow Pharmaceuticals v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997) (citing *Schaefer v. Texas Employers' Ins. Ass'n,* 612 S.W.2d 199, 204 (Tex. 1980)).

■ The problem with NAVL's argument is that Savage was allowed to express his underlying opinion without objection when the testimony was presented to the jury. Since the animation was a graphic depiction of the opinion admitted into evidence without objection, NAVL's trial objection to the video depiction of that opinion was waived. Video animation and other demonstrative evidence that "summarize, or perhaps emphasize, testimony are admissible if the underlying testimony has been admitted into evidence, or is subsequently admitted into evidence." *See Uniroyal Goodrich Tire Co.,* 977 S.W.2d at

342; *Speier v. Webster College,* 616 S.W.2d 617, 618 (Tex.1981).

Lufkin Moving and Cartagena state in their brief that they "join in and adopt" NAVL's challenge to the computer video. We have rejected that challenge.

### CONCLUSION

We affirm the jury's findings regarding negligence, proximate cause, and percentage causation. We affirm the judgment as to actual damages for all appellees; however, in light of our holding regarding joint and several liability, we order the judgment reformed to conform to the jury's findings pertaining to percentages of causation. We affirm the jury's finding that NAVL and NaTex were a single business enterprise with respect to their Texas operations; they are liable for each other's negligence. We deny appellants' requests for a new trial.

However, we reverse the trial court's findings of joint and several liability, and we find insufficient evidence to support the jury findings of conspiracy, alter ego, and joint enterprise. As we also find no basis for the jury's findings of malice, we vacate the findings and the award of punitive damages and order that appellees recover no punitive damages.

Specifically, we order the judgment modified to provide that Cartagena is liable for 5% of the judgment, Lufkin Moving is liable for 20%, NaTex is liable for 35% and NAVL is liable for 40%, based on the jury's allocation of responsibility. In addition, the judgment is to provide that Lufkin Moving, NaTex, and NAVL are each vicariously liable for Cartagena's 5% responsibility. Also, NaTex and NAVL are liable for each other's percentage of responsibility. NaTex and NAVL are liable together for 75% of the judgment, in addition to their vicarious liability for Cartagena's share. No defendant is jointly and

 

severally liable for the entire judgment. The judgment is to provide that no defendant is liable for exemplary damages.

REVERSED AND RENDERED IN PART, REFORMED, AFFIRMED IN PART, AND REMANDED FOR ENTRY OF JUDGMENT IN COMPLIANCE WITH THIS OPINION.

BURGESS, Justice, concurring and dissenting.

I generally concur in a well-written opinion by my brother justice. However I must add some additional remarks and dissent in part.

The majority holds admitting evidence of the other accidents was error. I believe all the evidence was sufficiently probative and, while certainly prejudicial, the probative value substantially outweighed the prejudicial effect.

The majority infers they do not agree with the jury's assessment of responsibility. I do not join in that inference and would make no comment other than to hold the evidence sufficient to support the jury's findings.

I totally disagree with the majority's rendition of the punitive damages. The majority states: "Cartegena was not driving appreciably faster than other vehicles on the highway...." However, a reconstruction expert opined Cartegena was traveling 61–65 miles per hour in a 60 mile per hour zone. Furthermore, not only did Cartegena not possess a commercial driver's license, but the reasons were he was blind in his right eye and had failed the written exam. Both of these reasons were known to his superiors. Even a vice-president for NorthAmerican Van Lines testified that allowing an unsafe driver to operate a NorthAmerican Van Lines' or NATEX shipment placed the public in an extreme degree of risk and placed people at risk for serious bodily injury. The jury heard ample evidence of NorthAmerican's awareness of a problem with unqualified or unlicensed drivers. Moreover, a jury is not asked to set their common sense and life experiences aside. As part of the motoring public they appreciate the potential dangers of large, loaded trucks traveling at or above the speed limit. I would uphold the punitive damages and in this regard, I respectfully dissent.