In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00086-CV
______________________________


USA TRUCK, INC., AND
DONALD RAY JONES, SR., Appellants
 
V.
 
PATRICIA WEST, INDIVIDUALLY, AND HAZEL HUIE,
ADMINISTRATRIX OF THE ESTATE OF
NATHAN GARY CONDOR, DECEASED, Appellees


                                              

On Appeal from the 62nd Judicial District Court
Hopkins County, Texas
Trial Court No. CV33626


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          Patricia West filed a wrongful death lawsuit against USA Truck, Inc., and Donald
Ray Jones, Sr., for damages arising from a vehicle accident resulting in the death of her
son, Nathan Gary Condor. A jury awarded actual damages of $500,000.00 against USA
Truck and Jones, and $750,000.00 in punitive damages against Jones only. The trial
court, in accordance with the jury's comparative negligence findings, reduced the amount
of actual damages to $350,000.00, plus pretrial interest, and left the amount of punitive
damages undisturbed. The parties later settled the amount of actual damages, and this
appeal concerns only the award of punitive damages. We affirm. 
Background
          Jones was a long-haul truck driver employed by USA Truck. At 6:00 a.m.
December 21, 2000, he left Chattanooga, Tennessee, in his eighteen-wheel tractor-trailer,
picked up a load of motorcycles, and headed for the Dallas area where the motorcycles
were scheduled to be delivered December 22 at 4:00 p.m. On his way, he decided to stop
at his home in Sulphur Springs, Texas.
          Jones arrived at his home on Highway 19 in Sulphur Springs shortly after midnight
on December 22. As he approached his home, he decided to back his tractor-trailer into
his driveway to park for the night so that he could drive forward onto the highway the next
day. Jones was traveling in one of the southbound lanes of traffic, and his home was
located on the north side of the highway. In order to back into his driveway, Jones was
required to back across the two northbound lanes, temporarily obstructing traffic in those
two lanes. Jones testified that, before he began the backing maneuver, he stopped in one
of the southbound lanes for thirty seconds to check traffic in both directions. 
          At some point after Jones started backing into the driveway, he saw the two
headlights of Condor's vehicle approaching him in one of the northbound lanes. Jones
flashed his own headlights three times to warn Condor he was backing across the two
northbound lanes. Condor did not stop and collided with the side of Jones' trailer. Condor
died from injuries sustained in that collision.
          The jury determined that Jones' negligence was fifty percent responsible for the
accident, USA Truck twenty percent, and Condor thirty percent. The trial court reduced the
award of actual damages in accordance with those figures. The jury also found that the
harm to Condor resulted from malice on the part of Jones. 
Sufficiency of the Evidence Supporting Malice
          In the first point of error, it is contended the evidence is legally and factually
insufficient to support the jury's finding of malice. We find the evidence is both legally and
factually sufficient to support the jury's determination and overrule this contention.
          In order for the jury to award punitive damages, West was required to prove by clear
and convincing evidence that the harm to Condor was caused by malice on the part of
Jones. The following standards of review apply. In reviewing the legal sufficiency of the
evidence, we look at all the evidence in the light most favorable to the finding to determine
whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. Looking at the evidence in the light most favorable to the finding means
we must assume the fact-finder resolved disputed facts in favor of its finding if a
reasonable fact-finder could do so. A corollary to this requirement is that we will disregard
all evidence that a reasonable fact-finder could have disbelieved or found to have been
incredible. Southwestern Bell Tel. Co. v. Garza, 164 S.W.3d 607, 627 (Tex. 2004).
          In reviewing the factual sufficiency of the evidence, we consider all the evidence the
fact-finder could reasonably have found to be clear and convincing, and ask whether there
was sufficient evidence presented to produce in the mind of a rational fact-finder a firm
belief or conviction as to the truth of the matter required to be proven. In re C.H., 89
S.W.3d 17, 24 (Tex. 2002).
          The trial court asked the jury to determine if the harm to Condor resulted from
"malice" on the part of Jones. Under current law, "malice" is defined as "a specific intent
by the defendant to cause substantial injury or harm to the claimant." Tex. Civ. Prac. &
Rem. Code Ann. § 41.001(7) (Vernon Supp. 2005). At the time of Condor's death,
however, the statutory definition of "malice" included an alternative gross negligence
component. Before amendment in 2003, "malice" was defined as: 
(A) a specific intent by the defendant to cause substantial injury to the
claimant; or
 
          (B) an act or omission:
 
(i) which when viewed objectively from the standpoint of the actor at
the time of its occurrence involves an extreme degree of risk, considering the
probability and magnitude of the potential harm to others; and
 
(ii) of which the actor has actual, subjective awareness of the risk
involved, but nevertheless proceeds with conscious indifference to the rights,
safety, or welfare of others.

Act of April 11, 1995, 74th Leg., R.S., ch. 19, § 1, 1995 Tex. Gen. Laws 108, 109,
amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 13.02, 2003 Tex. Gen. Laws
847, 887 (emphasis added). 
          In 2003, the Legislature removed subpart (B) from the malice definition, recodifying
it as the definition of "gross negligence." See Tex. Civ. Prac. & Rem. Code Ann.
§ 41.001(11) (Vernon Supp. 2005); see also Dillard Dep't Stores, Inc. v. Silva, 148 S.W.3d
370, 373 (Tex. 2004). In its charge to the jury in this case, the trial court omitted
subpart (A) and charged only under subpart (B). 
          For purposes of our review, malice therefore is an act or omission: (1) which when
viewed objectively from the standpoint of the actor at the time of its occurrence involves
an extreme degree of risk, considering the probability and magnitude of the potential harm
to others; and (2) of which the actor has actual, subjective awareness of the risk involved,
but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of
others. Malice differs from ordinary negligence because it requires extreme risk and a
conscious indifference to that risk. Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 21 (Tex.
1994). 
          Beginning with the first prong of our malice definition, we find the following evidence
presented at trial shows Jones' actions objectively involved an extreme degree of risk. On
a dark and moonless night, Jones backed a seventy-five-foot-long tractor-trailer across two
lanes of traffic on a four-lane urban highway. An expert estimated the entire backing
maneuver would have taken Jones thirty to forty seconds to complete, yet Jones only had
twenty seconds of visibility in the direction from which Condor approached due to a curve
in the road and natural obstructions.
          Another expert testified that, because Jones' headlights were pointed toward
Condor, they would have "take[n] up quite a bit of [Condor's] attention." The expert also
testified that, when Jones flashed his high-beam headlights, it would have distracted and
confused Condor. Other testimony suggested it would have been difficult for Condor to
see Jones' trailer because the trailer was behind the glare of the tractor headlights.
          In addition, two experts testified that, in their opinion, Jones' actions were extremely
risky. Dave Stopper, a trucking safety expert, testified Jones' actions created, "[A] very
high probability of causing serious injury or death . . . ." Andy Irwin, an accident
reconstructionist, testified, "The kid in the pickup truck is going to be coming down the
road. It's his lane to travel in. I think he's got the right of way in that lane. I don't think you
have any business backing a trailer across his lane of travel in the dark."
          West presented additional evidence showing that, on the day of the accident, Jones
drove longer than was allowed by regulations. Pursuant to regulations, Jones was required
to take an eight-hour break for every ten hours of driving time. Jones had driven fourteen
hours without taking the required break in the nineteen-hour span leading up to the
accident. Stopper found Jones' excessive time behind the wheel to be "egregious," stating,
"[F]rom a driver's standpoint, that's suicidal. You're going to kill yourself or somebody
else."
          Viewing this evidence, along with the remaining evidence in the record, in the light
most favorable to the jury's finding, we hold that the evidence is sufficient to allow a rational
fact-finder to form a firm belief or conviction that Jones' actions, viewed objectively from
his standpoint, involved an extreme degree of risk. 
          Jones testified he had backed his tractor-trailer into his driveway numerous times
without incident. He contends this proves the maneuver was not extremely dangerous. 
The fact that someone has performed a dangerous activity numerous times without
consequence does not change the underlying nature of the activity. Even though Jones
may have safely backed into his driveway before, the jury was not precluded from finding
that, on the night of the accident, Jones' actions were objectively extremely risky.
          Considering all of the evidence the jury could have found to be clear and convincing,
we find there was sufficient evidence presented to produce in the mind of a rational fact-finder a firm belief or conviction that Jones' actions, viewed objectively from his standpoint,
involved an extreme degree of risk.
          Turning to the second prong of the malice definition, we examine the evidence
presented at trial to determine if it shows Jones had actual, subjective awareness of the
risk involved, but nevertheless proceeded with conscious indifference to the rights, safety,
or welfare of others. This subjective mental state can be proved by both direct and
circumstantial evidence. Moriel, 879 S.W.2d at 23. Further, evidence that Jones exercised
"some care" will not preclude a finding of malice. See Gen. Motors Corp. v. Sanchez, 997
S.W.2d 584, 595 (Tex. 1999).
          Testimony from Jones himself shows he was actually aware of the risk he would
create by backing across the two northbound lanes of Highway 19. Jones testified it was
no surprise to him that accidents such as the one in this case could happen. He testified
he was aware his backing maneuver would potentially create a problem for traffic. He
agreed he was aware that, by backing into the driveway, he was doing something that
would create a risk or hazard. Jones stated he seldom parked his trailer at home, and the
only time he took the risk of backing the trailer into his driveway was when he had a
valuable load. Further, Stopper testified that, in his opinion, Jones knew backing the trailer
was, "[D]angerous and he just conscientiously [sic] took a chance." 
          Viewing this evidence, along with the entire record, in the light most favorable to the
jury's determination, we hold the evidence is sufficient to allow a rational fact-finder to form
a firm belief or conviction that Jones had actual, subjective awareness of the risk involved
but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of
others.
          Jones testified he waited thirty seconds to make sure no traffic was approaching
before commencing to back his trailer. He contends this shows he exercised caution and
hence was not indifferent to the safety of others. But, the jury could have believed the time
Jones spent checking for traffic was evidence he was aware of the risk he was about to
create. Again, we note that evidence Jones exercised "some care" does not preclude a
finding of malice. See Sanchez, 997 S.W.2d at 595.
          Jones testified he felt it was safer to back into the driveway at night, rather than pull
in forward and then back onto the highway the next day. He contends this also shows he
was not indifferent to the safety of others. Assuming his testimony is true, it does not
preclude a finding that he was consciously indifferent to the safety of others. If one is in
a crowded room, throwing a knife may be safer than shooting a gun. But, to proceed with
either action is to act with a conscious disregard for the safety of others. Jones' testimony
that he chose the lesser of two unnecessary evils did not prohibit the jury from determining
he acted with the requisite subjective mental state.
          Considering all of the evidence the jury could have found to be clear and convincing,
we find the evidence is sufficient to allow a rational fact-finder to form a firm belief or
conviction that Jones had actual, subjective awareness of the risk involved, but
nevertheless proceeded with conscious indifference to the rights, safety, or welfare of
others. 
          We conclude that the evidence presented was both legally and factually sufficient
to support both elements of malice included in the jury charge. Accordingly, we overrule
Jones' first point of error.
Punitive Damages Not Excessive
          In his second point of error, Jones contends the amount of the punitive damages
award is excessive. We review a complaint of excessive damages under a factual
sufficiency standard. We will examine all of the evidence to determine whether the award
is supported by sufficient evidence and reverse only if the award is so against the
overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. If
sufficient probative evidence exists supporting the jury's award, we will not substitute our
judgment for that of the jury. Exxon Corp. v. Miesch, 180 S.W.3d 299 (Tex. App.—Corpus
Christi 2005, pet. filed).
          When determining the amount of punitive damages, a jury should consider five
factors: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the
degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties
concerned; and (5) the extent to which such conduct offends a public sense of justice and
propriety. Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981). 
          The nature of the wrong refers to the nature of the injury or harm caused by the
defendant's actions. Ellis County State Bank v. Keever, 936 S.W.2d 683, 686 (Tex.
App.—Dallas 1996, no pet.). This case involved the most serious injury of all—death to
a human being.
          The character of the conduct involved and the degree of the wrongdoer's culpability
refer to the evidence of Jones' state of mind, the degree of his conscious indifference, and
any malice in his actions. Keever, 936 S.W.2d at 687. The jury determined that Jones
acted with malice. The evidence of Jones' state of mind and the degree of his conscious
indifference has been discussed.
          The situation and sensibilities of the parties concerned refers to evidence of such
things as remorse, remedial measures, and ability to pay the punitive damages. Id. at 688. 
Jones testified he felt sorry for Condor. But, he also testified he did not accept
responsibility for the accident. He was asked, "[Y]ou would have done the same thing and
you would still do the same thing today as you sit here right now, correct?" Jones replied,
"Right." 
          The only ambivalent factor in this analysis is that Jones' conduct does not greatly
offend a public sense of justice and propriety. There is no evidence that Jones intended
to harm anyone or that he had previously harmed others by backing into his driveway. 
However, Condor was killed, Jones showed little remorse, and there is ample evidence to
support the jury's determination that Jones acted with malice. We hold that the jury's
assessment of punitive damages was not excessive.
          Jones also contends the punitive damages award is so excessive it violates his right
to due process under the Fourteenth Amendment to the United States Constitution. See
U.S. Const. amend. XIV; BMW of N. Am., Inc. v. Gore, 517 U.S. 559 (1996). Under Gore,
even if an assessment of punitive damages is not deemed excessive under state law, it
may violate a party's substantive due process right to protection from "grossly excessive"
punitive damages awards. Gore, 517 U.S. at 568. The United States Supreme Court
identified three factors to use in determining whether an award is grossly excessive and
in violation of the Fourteenth Amendment: (1) the degree of reprehensibility of the
defendant's conduct, (2) the disparity between the harm or potential harm suffered by the
plaintiff and the exemplary damage award, and (3) the difference between the size of the
exemplary damage award and the civil penalties authorized or imposed in comparable
cases. Id. at 574. 
          Jones focuses solely on the first factor. He asserts that his conduct was merely
accidental and that any punitive damages award would be excessive. The United States
Supreme Court has identified five factors to use in determining the degree of
reprehensibility of the defendant's conduct: (1) the harm caused was physical as opposed
to economic; (2) the tortious conduct evinced a reckless disregard of the health or safety
of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved
repeated actions or was an isolated incident; (5) the harm was the result of the intentional
malice, trickery, deceit, or mere accident. State Farm Mut. Auto Ins. Co. v. Campbell, 538
U.S. 408 (2003). 
          Here, the harm was predominantly physical, resulting in the loss of human life. The
jury determined, and the evidence supports, that Jones acted with a conscious disregard
for the safety of others. Because the harm was mostly physical, the financial vulnerability
of the victim is less important. The evidence shows the conduct which resulted in Condor's
death had been performed repeatedly, albeit without harm. Finally, while the harm was not
the result of intentional malice, trickery, or deceit, it was more than a mere accident. 
Weighing these five factors to determine the reprehensibility of Jones' conduct, we find the
evidence supports the jury's award.
          Jones does not rely on the second Gore factor—the disparity between the harm or
potential harm suffered by the plaintiff and the exemplary damage award—but this factor
also supports the jury's award. In this case, actual damages were determined to be
$500,000.00. The amount of punitive damages was assessed at $750,000.00. This is a
disparity of only fifty percent.
          Jones does not contend or cite any authority to show that the punitive damages
award in this case is greater than those imposed in comparable cases.
          The jury's award of punitive damages was not excessive.
Conclusion
          We hold the evidence is legally and factually sufficient to support the jury's finding
of malice, and we further hold the jury's award of punitive damages was not excessive. 
          Accordingly, we affirm the judgment.



                                                                Donald R. Ross
                                                                Justice

Date Submitted:      February 23, 2006
Date Decided:         March 9, 2006