ACCEPTED
06-15-00009-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
8/17/2015 4:47:18 PM
DEBBIE AUTREY
CLERK

NO. 06-15-00009-CV

IN THE COURT OF APPEALS
SIXTH COURT OF APPEALS DISTRICT
TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
8/17/2015 4:47:18 PM
DEBBIE AUTREY
Clerk

DENNIS RAYNER AND JOE TEX XPRESS, INC.,

*Appellants,*

V.

KRISTA DILLON,

*Appellee.*

ON APPEAL FROM THE 62ND DISTRICT COURT, HOPKINS COUNTY, TEXAS
HONORABLE WILL BIARD PRESIDING
CAUSE NO. CV40921

## APPELLANTS' BRIEF

FEE, SMITH, SHARP & VITULLO, L.L.P.
Bryan P. Reese
State Bar No. 00789791
Jennifer M. Lee
State Bar No. 24049084
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas  75240
(972) 934-9100 – Telephone
(972) 934-9200 – Fax
breese@feesmith.com
jlee@feesmith.com

HOUSTON DUNN, PLLC
Samuel V. Houston, III
State Bar No. 24041135
4040 Broadway, Suite 440
San Antonio, Texas  78209
(210) 775-0882 – Telephone
(210) 826-0075 – Fax
sam@hdappeals.com

**ATTORNEYS FOR APPELLANTS**
**DENNIS RAYNER AND JOE TEX XPRESS, INC.**
**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties to this appeal and the names and addresses of those parties' counsel:

| **APPELLANTS/DEFENDANTS** | **APPELLATE COUNSEL** |
|---|---|
| Dennis Rayner | Samuel V. Houston, III |
| Joe Tex Xpress, Inc. | HOUSTON DUNN, PLLC |
| | 4040 Broadway, Suite 440 |
| | San Antonio, Texas 78209 |
| | |
| | **TRIAL/APPELLATE COUNSEL** |
| | Bryan P. Reese |
| | Jennifer M. Lee |
| | FEE, SMITH, SHARP & VITULLO, L.L.P. |
| | Three Galleria Tower |
| | 13155 Noel Road, Suite 1000 |
| | Dallas, Texas 75240 |
| | |
| **APPELLEE/PLAINTIFF** | **APPELLATE COUNSEL** |
| Krista Dillon | John Mercy |
| | MERCY CARTER TIDWELL, L.L.P. |
| | 1724 Galleria Oaks Drive |
| | Texarkana, Texas 75503 |
| | |
| | **TRIAL/APPELLATE COUNSEL** |
| | Brent Goudarzi |
| | GOUDARZI & YOUNG, L.L.P. |
| | P.O. Drawer 910 |
| | Gilmer, Texas 75644 |

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL ..................................................... i

TABLE OF CONTENTS ................................................................. ii

TABLE OF AUTHORITIES .............................................................. iv

STATEMENT OF THE CASE ............................................................. vi

STATEMENT REGARDING ORAL ARGUMENT ............................................... vii

ISSUE PRESENTED ................................................................... vii

STATEMENT OF FACTS ................................................................. 1

    I.    This Appeal Arises Out of an Accident Between Dennis Rayner and Krista Dillon in Sulphur Springs. ........................... 1

    II.   Joe Tex Operates a Trucking Operation Out of Mount Vernon; Dennis Rayner, an Experienced Commercial Truck Driver, Was One of Its Drivers. ............................................... 2

    III.  Ms. Dillon Sues Joe Tex and Dennis; Dennis Accepts Responsibility for the Accident; and a Judgment Is Rendered in Ms. Dillon's Favor. ............................................. 3

SUMMARY OF THE ARGUMENT ........................................................... 5

ARGUMENT .......................................................................... 6

    I.    A Heightened Evidentiary Standard Applies to Gross Negligence That Is Reflected in the Standard of Review. ........... 6

        A.    Exemplary Damages Findings Must Be Supported By Clear and Convincing Evidence ....................................... 6

        B.    Gross Negligence Findings Are Subject to a Heightened Standard of Review. ........................................ 7

    II.   Legally Insufficient Evidence Supports the Gross Negligence Findings; Evidence of Simple Negligence Is Not Enough. ......... 8

        A.    Dennis Rayner Was Not Operating His Truck in a Grossly Negligent Manner on the Day of the Accident. ................ 8

            1.    Legally insufficient evidence supports the objective element of gross negligence. ................................... 9

2.     Legally insufficient evidence supports the subjective element of gross negligence. .................................. 11

B.     Joe Tex Was Not Grossly Negligent in Entrusting Dennis with a Truck. .................................................... 11

1.     Legally insufficient evidence supports the objective element of gross negligence. .................... 11

2.     Legally insufficient evidence supports the subjective element of gross negligence. ................. 13

C.     Joe Tex's and Dennis's Purported "Bad Acts" Cannot Support the Gross Negligence Findings Because They Have No Causal Connection to the Harm Suffered by Ms. Dillon. ..................................................... 14

D.     Log Book Errors Are No Evidence That Dennis and Joe Tex Were Grossly Negligent in Causing the Accident Underlying This Appeal. ................................................ 15

1.     The alleged violation of a federal regulation does not establish that a defendant has been grossly negligent. ............................................................ 17

2.     A log book error does not prove that Dennis was fatigued under any evidentiary standard. ............... 17

3.     The standard of review requires the Court to consider the evidence proving that Dennis was not fatigued. ............................................................ 19

III.     The Evidence is Factually Insufficient to Support the Gross Negligence Findings Against Dennis and Joe Tex. ..................... 19

IV.     Conclusion and Prayer ............................................................ 20

CERTIFICATE OF COMPLIANCE ............................................................ 22

CERTIFICATE OF SERVICE ............................................................ 22

APPENDIX ............................................................................................... A

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Barnes v. United Parcel Serv., Inc.*,
395 S.W.3d 165 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ........15

*Bennett v. Reynolds*, 315 S.W.3d 867 (Tex. 2010) .......................................15

*Boerjan v. Rodriguez*, 436 S.W.3d 307 (Tex. 2014) (per curiam) .......7, 9, 12

*Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925 (Tex. 1993) ....................17

*City of Keller v. Wilson*, 168 S.W.3d 802 (Tex. 2005) ............................ 8, 19

*Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*,
271 S.W.3d 238 (Tex. 2008) .........................................................................8

*Dalworth Trucking Co. v. Bulen*,
924 S.W.2d 728 (Tex. App.—Texarkana 1996, no pet.) ...........................15

*Diamond Shamrock Refining Co. v. Hall*,
168 S.W.3d 164 (Tex. 2005)............................................................ 7, 8, 15

*Ford Motor Co. v. Ridgway*, 135 S.W.3d 598 (Tex. 2004) ........................17

*In re J.F.C.*, 96 S.W.3d 256, 265 (Tex. 2002) ...........................................20

*JSC Neftegas-Impex v. Citibank, N.A.*,
365 S.W.3d 387 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) ....... 18

*Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778 (Tex. 2001) ................. 9

*Lozano v. Lozano*, 52 S.W.3d 141 (Tex. 2001) ...........................................17

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724 (Tex. 2003)...........................17

*McDorman ex rel. Connelly v. Texas-Cola Leasing Co.*,
288 F. Supp. 2d 796 (N.D. Tex. 2003)...............................................13, 14

*N. Am. Van Lines, Inc. v. Emmons*,
50 S.W.3d 103 (Tex. App.—Beaumont 2001, pet. denied)..............9, 10, 12

*Perez v. Arredondo*,
452 S.W.3d 847 (Tex. App.—San Antonio 2014, no pet.) ........................ 12

*Reynolds & Huff v. White*,
 378 S.W.2d 923 (Tex. Civ. App.—Tyler 1964, no writ) ............................11

*Rivas v. City of Houston*, 17 S.W.3d 23
 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g) ....... 18

*Safeshred, Inc. v. Martinez*, 365 S.W.3d 655 (Tex. 2012) ......................14, 15

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003)............ 14

*Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607 (Tex. 2004)................... 15, 18, 19

*U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118 (Tex. 2012) .......6, 7, 11, 14, 17

*USA Truck, Inc. v. West*,
 189 S.W.3d 904 (Tex. App.—Texarkana 2006, pet. denied).................... 10

*Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322 (Tex. 1993)............. 12

*Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934 (Tex. 1998)............... 18

## STATUTES

TEX. CIV. PRAC. & REM. CODE § 41.001 .......................................................... 7

TEX. CIV. PRAC. & REM. CODE § 41.003 .........................................................15

## REGULATIONS

49 C.F.R. § 395.3 ............................................................................................15, 16

49 C.F.R. 395.8................................................................................................. 16

# STATEMENT OF THE CASE

**Nature of the Case:**

Krista Dillon sued Joe Tex Xpress, Inc. and its driver, Dennis Rayner, seeking actual and exemplary damages for injuries sustained in an accident on Interstate 30. CR 2901-07. After a multi-day trial, the jury found Dennis and Joe Tex negligent and grossly negligent, and it awarded actual and exemplary damages. CR 3006, 3020.

**Trial Court:**

The Honorable Will Biard, Judge of the 62nd District Court, Hopkins County, Texas presided over the jury trial.

**Trial Court Disposition:**

After applying the statutory caps on exemplary damage awards, the trial court rendered a judgment consistent with the jury's verdict. CR 3031. The compensatory damages were paid shortly after the judgment was entered.

## STATEMENT REGARDING ORAL ARGUMENT

Given recent decisions from the Texas Supreme Court clarifying the standard of review to be applied to gross negligence claims and the clear and convincing evidentiary standard, oral argument could assist the Court in resolving the appeal.

## ISSUE PRESENTED

Appellants believe this case presents the following issue:

Legally and factually insufficient evidence supports the jury's gross negligence findings against Dennis Rayner and Joe Tex Xpress, Inc.

TO THE HONORABLE SIXTH COURT OF APPEALS:

Appellants Dennis Rayner and Joe Tex Xpress, Inc. respectfully present this brief requesting that the Court reverse the trial court's judgment finding that Dennis and Joe Tex were grossly negligent and awarding exemplary damages to appellee Krista Dillon.

## STATEMENT OF FACTS

### I. This Appeal Arises Out of an Accident Between Dennis Rayner and Krista Dillon in Sulphur Springs.

The events leading up to the accident are largely undisputed. On Friday, July 23, 2010, Ms. Dillon was returning home on Interstate 30 following a shopping trip to Wal-Mart. 5 RR 106. Ms. Dillon was traveling in the right lane and intended to leave the interstate at exit 127. 5 RR 108. At around 1:30 p.m., a commercial truck driven by Dennis Rayner moved into the right lane and hit the driver side, rear portion of Ms. Dillon's car. 5 RR 108, 283-84, 292. The impact caused Ms. Dillon's car to leave the interstate; it came to rest in the grassy median between the interstate and the service road. 5 RR 109.

Dennis did not see Ms. Dillon's car before he began moving into the right lane. 5 RR 282, 284. He was in the left lane because he had passed a car that had slowed to exit the interstate, and he needed to get back into the right lane because a commercial truck should not stay in the left lane. 5 RR 282. He was not aware of Ms. Dillon's presence until he observed her car leaving the interstate and going into the median. 5 RR 284. Having witnessed this, Dennis

pulled over because he did not know what had happened. 5 RR 285-86. The truck did not sustain any damage following its contact with Ms. Dillon's car. 5 RR 76.

The police and EMS responded at the accident scene. 5 RR 110. Ms. Dillon did not request medical treatment at that time. 5 RR 111, 152. Her car was towed away, and she left the scene with a friend who took her to the wrecker yard so that she could get her belongings out of the car. 5 RR 1. The friend then took Ms. Dillon home. 5 RR 111. Dennis and Ms. Dillon did not communicate at the accident scene. 5 RR 152.

The responding police officers conducted an investigation at the scene. Dennis was cited for changing lanes when unsafe. 9 RR PX:17; 5 RR 82. Consistent with that citation, the responding officer completed an accident report, concluding that Dennis caused the accident by making an improper lane change. 5 RR 83; 9 RR PX:17. The officer did not find that driver fatigue was a contributing factor to the accident. 5 RR 83; 9 RR PX:17; 17 RR DX:50.

Following the accident, Dennis took a drug test, which was negative for drugs and alcohol. 2 RR 208; 5 RR 76-77.

## II. Joe Tex Operates a Trucking Operation Out of Mount Vernon; Dennis Rayner, an Experienced Commercial Truck Driver, Was One of Its Drivers.

Joe Tex is a company based out of Mount Vernon. *See* 17 RR DX:17. It began operating in June 2004. 3 RR 49. Dennis Rayner started driving for Joe Tex in 2007. 5 RR 265.

Dennis submitted an employment application in April 2007. 2 RR 192; 17 RR DX:7. At that time, Dennis had over 3 decades of experience operating a commercial truck. 5 RR 263, 265; 2 RR 202. He held (and continues to maintain) a commercial driver's license as well as a Department of Transportation medical card. 5 RR 266. As part of the hiring process, Dennis successfully completed a road test with a Joe Tex employee. 2 RR 190-91; 17 RR DX:1. Dennis was also subjected to a pre-employment drug test, which he passed. 2 RR 196.

Dennis voluntarily left Joe Tex in March 2011, citing a need to be closer to Houston and his wife, who was suffering from health complications. 5 RR 266, 267; 16 RR PX:87.

During his nearly 4 years as a Joe Tex driver, he was involved in 3 accidents other than the one giving rise to this appeal. Of these four accidents, however, fault was only assigned to him in the Sulphur Springs accident and one occurring three years earlier in Greenwood, Louisiana. 16 RR PX:87. No injuries were reported for any of the accidents. 16 RR PX:87. Injuries, however, would ultimately be claimed by Ms. Dillon for the accident that occurred in Sulphur Springs. CR 2906-07.

### III. Ms. Dillon Sues Joe Tex and Dennis; Dennis Accepts Responsibility for the Accident; and a Judgment Is Rendered in Ms. Dillon's Favor.

In March 2012, Ms. Dillon filed suit against Dennis and Joe Tex seeking damages for injuries sustained in the Sulphur Springs accident. CR 24. Ms.

Dillon asserted a negligence claim against Dennis, and a claim for negligent entrustment against Joe Tex. CR 26-27. In addition to seeking actual damages, Ms. Dillon eventually amended her pleadings to include gross negligence allegations against both Dennis and Joe Tex. CR 2905-06.[1]

A jury trial commenced in October 2014. Dennis accepted 100% responsibility for the accident. CR 285-86. Consistent with Dennis's position, Joe Tex confirmed that it would accept responsibility for the accident. 2 RR 318; 5 RR 16.

The jury found Dennis and Joe Tex liable for Ms. Dillon's injuries. CR 3009. The jury awarded $1,110,629.76 in actual damages for past and future medical expenses, past and future physical pain and suffering, and future physical impairment. CR 3011-13. The jury also found Dennis and Joe Tex grossly negligent, assessing Dennis with $2,000.00 in exemplary damages and Joe Tex with $3,000,000.00 in exemplary damages. CR 3014-15, 3022-23.

With the exception of the exemplary damage award against Joe Tex, a final judgment was rendered on the jury's verdict. CR 3031. After applying the damage caps in Chapter 41 of the Texas Civil Practice and Remedies Code, the trial court reduced the exemplary damages assessed against Joe Tex from

---

[1] Ms. Dillon's negligence and gross negligence claims against Joe Tex were based upon a number of theories. CR 2904-06. But the only specific negligence theory submitted to the jury was that Joe hired and continued to employ "an incompetent, unfit and/or reckless driver." CR 2905.

$3,000,000.00 to $1,679,295.52. CR 3032. The final judgment also assessed prejudgment interest and costs against Dennis and Joe Tex. CR 3031-32.

Four days after the judgment was signed, Joe Tex tendered to Ms. Dillon's counsel payment for $1,216,609.06, the compensatory damages awarded in the final judgment. CR 3037. In tendering the compensatory damages, Dennis and Joe advised Ms. Dillon that they intended to appeal the jury's gross negligence findings and exemplary damage awards. CR 3037. Dennis and Joe Tex then perfected this appeal.

## SUMMARY OF THE ARGUMENT

Gross negligence requires the plaintiff to prove something more than simple negligence. But the record in this case reflects, at most, only simple negligence flowing from Dennis's lane change. As a result, the gross negligence findings must be reversed.

The record does not present clear and convincing evidence of gross negligence. The accident itself is rather unremarkable. Dennis made a lane change without knowledge that Ms. Dillon was in the right lane and in his blind spot. There is nothing in the record to suggest that Dennis was grossly negligent in making this lane change. As for Joe Tex, the record does not demonstrate that Dennis was an incompetent or reckless driver, which is what Ms. Dillon was required to prove by clear and convincing evidence in order to hold Joe Tex liable for grossly negligent entrustment.

5

A successful plaintiff must point to aggravating circumstances or other bad acts to prove gross negligence. But a defendant cannot be punished for purported "bad acts" that have no connection to the plaintiff's harm. Ms. Dillion implicitly acknowledged that she had to prove something more than negligence. To that end, Ms. Dillon suggested through the entire trial that driver fatigue must have caused the accident because Dennis's log books contained errors. The record, however, is clear: fatigue had nothing to do with the accident. Thus, any evidence of Dennis's or Joe Tex's other "bad acts" cannot support the judgment because they have no causal relationship to the accident.

Ms. Dillon failed to meet her burden to prove—by clear and convincing evidence—that Dennis and Joe Tex were grossly negligent. Accordingly, the judgment must be reversed with respect to gross negligence and exemplary damages.

## ARGUMENT

### I. A Heightened Evidentiary Standard Applies to Gross Negligence That Is Reflected in the Standard of Review.

#### A. Exemplary Damages Findings Must Be Supported By Clear and Convincing Evidence.

Exemplary damages are "'exceptional'" and may only be awarded in limited situations. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 140 (Tex. 2012). Gross negligence requires proof to support both objective and subjective elements. *Id.* at 137; *see also* TEX. CIV. PRAC. & REM. CODE §

41.001(11). The evidentiary standard is clear and convincing. *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164, 170 (Tex. 2005). "'Clear and convincing' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. CIV. PRAC. & REM. CODE § 41.001(2).

The objective element requires the plaintiff to prove that "when viewed objectively from the defendant's standpoint at the time of the event, the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *U-Haul Int'l, Inc.*, 380 S.W.3d at 137. "An extreme risk is 'not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff.'" *Boerjan v. Rodriguez*, 436 S.W.3d 307, 311 (Tex. 2014) (per curiam) (citation omitted).

The subjective element requires proof that "the defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others." *U-Haul Int'l, Inc.*, 380 S.W.3d at 137. "'[A]ctual awareness means the defendant knew about the peril, but its acts or omissions demonstrated that it did not care.'" *Boerjan*, 436 S.W.3d at 311 (citation omitted).

**B.    Gross Negligence Findings Are Subject to a Heightened Standard of Review.**

Because gross negligence has a heightened burden of proof, the Court applies a heightened standard of review. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 248 (Tex. 2008); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). In reviewing the legal sufficiency of the evidence supporting the gross negligence finding, the court of appeals looks at all of the evidence in the record, not just the evidence supporting the finding. *Diamond Shamrock Refining Co.*, 168 S.W.3d at 170. While the evidence must be viewed in the light most favorable to the findings, the court must consider undisputed evidence that does not support the findings. *Id.* Ultimately, a challenge to the legal sufficiency of the evidence must be sustained if the appellate court determines no reasonable jury "'could form a firm belief or conviction that the matter that must be proven is true.'" *Id.* (citation omitted).

## II. Legally Insufficient Evidence Supports the Gross Negligence Findings; Evidence of Simple Negligence Is Not Enough.

### A. Dennis Rayner Was Not Operating His Truck in a Grossly Negligent Manner on the Day of the Accident.

The rather unremarkable facts surrounding the accident do not support the jury's gross negligence finding. Ms. Dillon's trial presentation focused little upon the accident itself. The only direct evidence regarding the accident is found in Dennis's trial testimony, Ms. Dillion's trial testimony, and the investigating officer's report. The accident only occurred because Dennis did

not realize that Ms. Dillon was in his blind spot before he changed lanes. 2 RR 210-11.

### 1. Legally insufficient evidence supports the objective element of gross negligence.

The evidence does not prove that Dennis's driving on the day of the accident created the likelihood of serious injury to Ms. Dillon. *See Boerjan*, 436 S.W.3d at 311. The mere fact that Dennis did not observe Ms. Dillon before moving into the right lane is not conduct that creates an extreme risk necessary to prove gross negligence. *See N. Am. Van Lines, Inc. v. Emmons*, 50 S.W.3d 103, 128 (Tex. App.—Beaumont 2001, pet. denied). While some may argue that Dennis was careless because he did not see Ms. Dillon before moving into the right lane, "behavior that is merely thoughtless or careless is not malicious or grossly negligent." *Id.*; *see also Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778 (Tex. 2001) ("Some evidence of simple negligence is not evidence of gross negligence.").

Aggravating circumstances are required to transform simple negligence into gross negligence. The objective element is not satisfied simply because the activity at issue can be dangerous. *See id.* at 786. In concluding that a driver's conduct did not meet the objective element, the court of appeals in *Emmons* explained that the record showed the driver "was not driving appreciably faster than other vehicles on the highway, and a witness noticed nothing erratic or unusual about his driving before the collision." *Emmons*, 50 S.W.3d at 128. The evidence only showed that the driver failed to see that the

plaintiff's vehicle had come to a stop. *Id.* Thus, there was legally insufficient evidence to show that the driver's conduct created an extreme risk. *Id.*

In stark contrast to *Emmons* and the evidence in this appeal, this Court discussed a number of aggravating circumstances that led it to affirm a gross negligence finding against a driver in *USA Truck, Inc. v. West*, 189 S.W.3d 904 (Tex. App.—Texarkana 2006, pet. denied). In *West*, a truck driver was attempting to back his loaded eighteen-wheel tractor-trailer into his driveway. *Id.* at 906. In order to do this, however, the driver had to back across two lanes of traffic on a four-lane urban highway. *Id.* at 909. The plaintiff apparently did not realize the lanes were obstructed, and he collided with the driver's trailer. *Id.* at 906.

In finding the evidence sufficient to show an extreme risk, the Court observed that the driver chose to make this maneuver on "a dark and moonless night," sometime after midnight. *Id.* at 908. According to an expert witness, the maneuver would take 30 to 40 seconds to complete. *Id.* But a driver such as the plaintiff only had 20 seconds of visibility given a curve in the road and other visual obstructions. *Id.* Further, the driver made the decision to obstruct the road after having driven 14 hours without taking the breaks required by federal regulations. *Id.*

The evidence in the record does not prove that Dennis's driving created an extreme risk. Indeed, the mere fact that an accident occurred "is not of itself evidence of negligence." *Reynolds & Huff v. White*, 378 S.W.2d 923, 929

(Tex. Civ. App.—Tyler 1964, no writ). There are no aggravating circumstances capable of transforming purported negligent acts into grossly negligent acts. The accident only occurred because Dennis did not see Ms. Dillon prior to making the lane change. 5 RR 283-85.

## 2. Legally insufficient evidence supports the subjective element of gross negligence.

Ms. Dillon did not prove that Dennis had actual, subjective knowledge of the extreme risk posed by his driving, but he nevertheless decided to drive on the day of the accident in conscious disregard of this knowledge. *See U-Haul Int'l, Inc.*, 380 S.W.3d at 137, 139. There is no evidence that Dennis's driving posed an extreme risk. But even assuming that it did, there is no evidence that Dennis had knowledge of the extreme risk and was consciously indifferent to it. *See id.*

Dennis had a full night's sleep the night before the accident. 5 RR 289, 303. As for the day of the accident, he had been driving only 2 to 3 hours by the time the accident occurred. 5 RR 281, 292. The accident occurred only when Dennis sought to get back into the right lane after passing a car that was exiting the interstate. 5 RR 282, 288. Dennis simply did not see Ms. Dillon's vehicle when he made the lane change. 5 RR 283-84.

## B. Joe Tex Was Not Grossly Negligent in Entrusting Dennis with a Truck.

## 1. Legally insufficient evidence supports the objective element of gross negligence.

There is not an extreme risk of serious harm simply because Joe Tex entrusted a commercial truck to Dennis. *See Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 327 (Tex. 1993). The mere possibility of a serious injury resulting from an accident is not enough to support a gross negligence finding. *See id.*; *Boerjan*, 436 S.W.3d at 312. Further, a defendant is not grossly negligent simply because there is the mere possibility that its driver might be in an accident. *See Emmons*, 50 S.W.3d at 129. Rather, as is made clear by case law, gross negligence requires egregious facts. *See Perez v. Arredondo*, 452 S.W.3d 847, 857 (Tex. App.—San Antonio 2014, no pet.). The evidence in this case falls short.

The record does not demonstrate that a trucking company in Joe Tex's position would have created an extreme risk by entrusting Dennis with a commercial truck. When he was hired, Dennis was a licensed commercial truck driver with over 30 years of experience. 5 RR 263. He successfully passed a pre-employment road test and drug test, and he continues to maintain a valid commercial driver's license. 5 RR 266, 269.

While he was not a perfect driver while employed at Joe Tex, the record does not show Dennis to be an incompetent or reckless driver.[2] He was involved in 4 accidents in the nearly 4 years that he worked at Joe Tex,

---

[2] The jury charge defined negligence by entrusting a vehicle to a driver who was "unlicensed or incompetent or reckless." CR 3008. The evidence shows that at all relevant times Dennis was a licensed driver. *See* 5 RR 266; 17 RR DX:7. Thus, the analysis focuses upon whether Dennis was incompetent or reckless.

including the accident in Sulphur Springs giving rise to this appeal. 16 RR PX:87. But other than the accident in Sulphur Springs, none of the other accidents involved injuries. 16 RR PX:87. Further, fault was attributed to Joe Tex in only 2 of the 4 accidents. 16 RR PX:87.

A plaintiff cannot sustain a gross negligence finding simply because the defendant's driver was involved in an accident. *See McDorman ex rel. Connelly v. Texas-Cola Leasing Co.*, 288 F. Supp. 2d 796, 809 (N.D. Tex. 2003). Given the state of the record, the evidence is insufficient to show that entrusting a truck to Dennis created the likelihood of serious injury to Ms. Dillon.

### 2. Legally insufficient evidence supports the subjective element of gross negligence.

The record does not show that Joe Tex actually knew that Dennis was an incompetent or reckless driver, but it acted in a way that demonstrated it did not care about the consequences that would result from his driving. As has been demonstrated, nothing in the record indicates that Dennis was an incompetent or reckless driver. The mere fact that a driver had been in prior accidents is not enough to demonstrate gross negligence as a matter of law. *See Perez*, 452 S.W.3d at 854. The record certainly does not present the sort of egregious facts that show conscious indifference on the part of the defendant.

"[A] party cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even

if they are wrong." *U-Haul Int'l, Inc.*, 380 S.W.3d at 141. Joe Tex representatives testified that Dennis came to Joe Tex with decades of experience and that they believed he was a competent, safe driver. 2 RR 202; 5 RR 27, 88. This testimony included that of Craig Skidmore, a person with over 30 years' experience in trucking and the former owner of a trucking company. 5 RR 64. Without any evidence to show that Joe Tex knew that allowing Dennis to drive a truck created an extreme risk of an accident or that it did not care that other drivers' safety was compromised by Dennis's driving, Joe Tex's challenge to the jury's findings must be sustained. *See McDorman ex rel. Connelly*, 288 F. Supp. 2d at 809-10 (finding no evidence to support a gross negligence claim based upon negligent entrustment).

### C. Joe Tex's and Dennis's Purported "Bad Acts" Cannot Support the Gross Negligence Findings Because They Have No Causal Connection to the Harm Suffered by Ms. Dillon.

"A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 423 (2003). This is precisely why the conduct underlying the plaintiff's claim for gross negligence "must have a 'nexus to the specific harm suffered by the plaintiff' in that case." *Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 663 (Tex. 2012) (citation omitted). To prevail on her claim, the plaintiff must prove the defendant's grossly negligent conduct proximately caused her injury. *See Barnes v. United Parcel Serv.,*

14

*Inc.*, 395 S.W.3d 165, 176 (Tex. App.—Houston [1st Dist.] 2012, pet. denied); *see also* TEX. CIV. PRAC. & REM. CODE § 41.003(a)(3). Thus, conduct that did not cause the plaintiff's harm cannot support a gross negligence finding. *See Safeshred, Inc.*, 365 S.W.3d at 663; *see also Bennett v. Reynolds*, 315 S.W.3d 867, 874-75 (Tex. 2010); *Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 733 (Tex. App.—Texarkana 1996, no pet.).[3]

### D. Log Book Errors Are No Evidence That Dennis and Joe Tex Were Grossly Negligent in Causing the Accident Underlying This Appeal.

Simple negligence by a defendant—standing alone—is not sufficient to establish that the defendant was grossly negligent. *Diamond Shamrock Refining Co.*, 168 S.W.3d at 171-72. Because something more is required, Ms. Dillon's theory at trial was that Dennis was grossly negligent because he was fatigued on the day of the accident. *See* CR 2905; 5 RR 206. As for Joe Tex, Ms. Dillon's theory was that Joe Tex was grossly negligent because it entrusted a truck to an incompetent or reckless driver who regularly drove while fatigued. *See* 5 RR 31.

The Federal Motor Carrier Safety Administration has promulgated regulations for commercial truck drivers. *See* 49 C.F.R. 395.3. Among other

---

[3] At the time the Court issued its opinion in *Dalworth*, gross negligence did not have to be proved by clear and convincing evidence, and the Texas Supreme Court had not yet held that a heightened standard of review applies when a gross negligence finding is challenged on appeal. *See* 924 S.W.2d at 731 (noting that the "traditional no evidence standard applies to gross negligence findings"). Thus, because a lower evidentiary standard was applied in *Dalworth*, the Court's sufficiency analysis does not apply in this appeal. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 621 (Tex. 2004).

restrictions, the regulations limit the number of hours that a driver may operate a commercial truck. *See* 49 C.F.R. 395.3. In general, a driver is permitted to work for 14 hours a day, but he can only drive for 11 of those 14 hours. 49 C.F.R. § 395.3; 5 RR 207.[4] In accordance with those restrictions, the federal regulations require truck drivers to maintain a driver log. 49 C.F.R. 395.8.

Because there was no direct evidence that Dennis was fatigued on the day of the accident or that fatigue played any role in the accident, Ms. Dillon assumed that Dennis was fatigued because there were errors in his log books. *See, e.g.*, 2 RR 218, 233. In her opinion, the errors were not clerical errors. Instead, these "errors" were intentional misrepresentations by Dennis to hide the fact that he had exceeded the hours-of-service and was fatigued. *See, e.g.*, 5 RR 46, 56. To prove this theory, Ms. Dillon's counsel spent a significant amount of time during trial examining witnesses about Dennis's log books in an effort to identify log book errors, even when the particular log book entries had no connection, temporal or otherwise, to the July 23, 2010 accident. *See, e.g.*, 2 RR 163-64.

Ms. Dillon's fatigued-driver theory fails for the following reasons.

---

[4] In addition to the 14-hour period discussed above, there are restrictions upon the number of consecutive days that a driver may operate a truck. *See* 49 C.F.R. § 395.3(b). But the Court need not consider these restrictions given that there is no evidence that log books and driver fatigue have any relationship to the accident underlying this appeal.

### 1. The alleged violation of a federal regulation does not establish that a defendant has been grossly negligent.

The "mere existence of federal regulations does not establish the standard of care or establish gross negligence per se." *U-Haul Int'l, Inc.*, 380 S.W.3d at 139. The fact that a defendant may not have complied with a federal regulation does not mean that he has been grossly negligent. *Id.* Thus, Dennis's alleged failure to comply with the Federal Motor Carrier Safety Administration regulations does not establish that he or Joe Tex was grossly negligent. *See id.*

### 2. A log book error does not prove that Dennis was fatigued under any evidentiary standard.

A jury is not permitted to infer a fact from circumstantial evidence when the inference is based on pure speculation. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004); *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993) ("[W]hile circumstantial evidence may be used to establish any material fact, we are not empowered to convert mere suspicion or surmise into some evidence."). Further, "a jury may not reasonably infer an ultimate fact from meager circumstantial evidence 'which could give rise to any number of inferences, none more probable than another.'" *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001) (describing the equal inference rule) (citation omitted). Finally, a jury cannot find a fact that requires a stacking of inferences. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003).

The jury could not conclude that Dennis was fatigued on the day of the accident simply because there were errors in his log book. To reach that conclusion, the jury would first have to infer that Dennis intentionally recorded false information because he was trying to hide the fact that he violated the hours-of-service regulations. But that inference is equally consistent with an inference that Dennis made simple mistakes in the logs and was not actually trying to hide anything. 5 RR 36 (explaining that errors in a log could be "paper work issues"), 294 (describing log book errors as mistakes); *see also Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936-37 (Tex. 1998); *Rivas v. City of Houston*, 17 S.W.3d 23, 28 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (op. on reh'g).

Further, even if the jury could infer that Dennis was attempting to hide hours-of-service violations, the jury would then have to infer that a violation meant that Dennis was actually fatigued. The jury, however, could not reach this conclusion because it requires a stacking of inferences. *See Marathon Corp.*, 106 S.W.3d at 728.

The foregoing establishes that there is no evidence of fatigue under the preponderance-of-the-evidence standard. Given the heightened evidentiary standard applied to gross negligence claims, it necessarily follows that the evidence falls short under the clear and convincing standard. *See Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 621 (Tex. 2004).[5]

---

[5] The distinction between the preponderance of the evidence and clear and convincing

### 3. The standard of review requires the Court to consider the evidence proving that Dennis was not fatigued.

The standard of review demands that the Court consider all of the evidence in the record; it is not required to disregard undisputed facts that do not support the jury's finding. *City of Keller*, 168 S.W.3d at 817; *Sw. Bell Tel. Co.*, 164 S.W.3d at 627. With the exception of the impermissible inferences proposed by Ms. Dillon, the remainder of the uncontroverted evidence affirmatively demonstrates that fatigue had nothing to do with the accident.

- The responding officer did not identify fatigue as a cause of the accident and did not otherwise note that Dennis was fatigued. 5 RR 82-83; 9 RR PX:17; 17 RR DX:50.

- Craig Skidmore talked with Dennis right after the accident and saw him at the Mount Vernon office shortly after the accident. 5 RR 85-87. It was clear to him that Dennis was not tired. 5 RR 86-87, 102-03.

- Dennis had only been driving for 2 to 3 hours on the day of the accident. 5 RR 281, 292, 297; *see also* 5 RR 289.

- Dennis denied that he was fatigued. 5 RR 227, 281.

Based upon the undisputed evidence in the record, no reasonable jury could form a firm belief or conviction that fatigue had anything to do with the accident.

### III. The Evidence is Factually Insufficient to Support the Gross Negligence Findings Against Dennis and Joe Tex.

---

standards is important. Evidence can be sufficient to support liability on a claim under the lower standard but be insufficient under a clear and convincing standard. *E.g.*, *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 423 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (finding evidence sufficient to prove fraud but insufficient to permit award of exemplary damages).

Where the factual sufficiency of the evidence is challenged on appeal, the appellate court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The primary inquiry is "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the'" plaintiff's allegations. *Id.* (citation omitted). Where there is disputed evidence, the appellate court "should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* The factually sufficiency challenge must be sustained "[i]f, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

For the same reasons that the evidence is legally insufficient to support the gross negligence findings against Dennis and Joe Tex, the evidence is also factually insufficient to support those gross negligence findings.

## IV. Conclusion and Prayer.

The evidence is legally and factually insufficient to support the gross negligence findings against Dennis and Joe Tex. At most, the accident giving rise to this appeal involves only simple negligence. Neither Joe Tex nor Dennis was grossly negligent. Accordingly, the judgment must be reversed.

WHEREFORE, PREMISES CONSIDERED, Appellants Dennis Rayner and Joe Tex Xpress, Inc. respectfully pray that the Court reverse the trial court's judgment ordering the award of exemplary damages and grant other and further relief to which they may be justly and equitably entitled.

Respectfully submitted,

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III
State Bar No. 24041135
HOUSTON DUNN, PLLC
4040 Broadway, Suite 440
San Antonio, Texas 78209
Telephone: (210) 775-0882
Fax: (210) 826-0075
sam@hdappeals.com

Bryan P. Reese
State Bar No. 00789791
Jennifer M. Lee
State Bar No. 24049084
FEE, SMITH, SHARP & VITULLO, L.L.P.
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240
Telephone: (972) 934-9100
Fax: (972) 934-9200
breese@feesmith.com
jlee@feesmith.com

ATTORNEYS FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

In accordance with Texas Rule of Appellate Procedure 9.4, the undersigned certifies that the foregoing computer-generated brief contains 5,182 words.

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served in accordance with the Texas Rules of Appellate Procedure on the 17th day of August, 2015, to the following:

John Mercy                                          *Via email/eservice*
MERCY CARTER TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503
jmercy@texarkanalawyers.com


Brent Goudarzi                                      *Via email/eservice*
GOUDARZI & YOUNG, L.L.P.
P.O. Drawer 910
Gilmer, Texas 75644
brent@goudarzi-young.com

/s/ Samuel V. Houston, III
SAMUEL V. HOUSTON, III

22

**APPENDIX**

A.    Final Judgment

B.    Jury Charge (First Phase of Trial)

C.    Jury Charge (Second Phase of Trial)

Appendix A

CAUSE NO. CV40921

| KRISTA DILLON | § | IN THE DISTRICT COURT |
| | § | |
| v. | § | OF HOPKINS COUNTY |
| | § | |
| DENNIS RAYNER AND | § | |
| JOE TEX XPRESS, INC. | § | 62ND JUDICIAL DISTRICT |

## JUDGMENT

On October 20, 2014, this cause came on to be heard. Krista Dillon, the Plaintiff, appeared in person and by attorney of record and announced ready for trial. Defendant Dennis Rayner appeared in person and by attorney of record and announced ready for trial. Defendant Joe Tex Xpress, Inc. appeared by corporate representative and by attorney of record and announced ready for trial. A jury having been previously demanded, a jury consisting of twelve qualified jurors was duly empaneled and the case proceeded to trial on October 21, 2014.

At the conclusion of the evidence, the Court submitted the questions of fact in the case to the jury. Both charges of the Court and the verdict of the jury are incorporated for all purposes by reference as if fully set forth herein. Because it appears to the Court that the verdict of the jury was for the Plaintiff and against the Defendants Dennis Rayner and Joe Tex Xpress, Inc., judgment should be rendered on the verdict in favor of the Plaintiff and against the Defendants Dennis Rayner and Joe Tex Xpress, Inc. jointly and severally.

IT IS THEREFORE ORDERED that Krista Dillon, Plaintiff, have and recover damages from Defendants Dennis Rayner and Joe Tex Xpress, Inc., jointly and severally, in the sum of $1,110,629.76, plus prejudgment interest in the amount of $94,006.43.

Judgment                                                                                           Page 1

IT IS FURTHER ORDERED that Krista Dillon, Plaintiff, have and recover exemplary damages from Defendant Dennis Rayner in the sum of $2,000.00.

IT IS FURTHER ORDERED that Krista Dillon, Plaintiff, have and recover exemplary damages from Defendant Joe Tex Xpress, Inc. in the sum of $1,679,259.52.

IT IS FURTHER ORDERED that the amount of the judgment rendered bear interest at the rate of post-judgment interest prescribed by law, and that Defendants Dennis Rayner and Joe Tex Xpress, Inc. be jointly and severally liable for such interest.

All taxable costs of Court in the amount of $ 11,972.87 are adjudged against Defendants Dennis Rayner and Joe Tex Xpress, Inc., jointly and severally.

All relief requested in this case and not expressly granted is denied. This judgment finally disposes of all parties and claims and is appealable.

SIGNED THIS ___6___ DAY OF ___November___, 2014.

_____
JUDGE PRESIDING

Appendix B

| KRISTA DILLON | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| v. | § | OF HOPKINS COUNTY |
| | § | |
| DENNIS RAYNER AND | § | |
| JOE TEX XPRESS, INC. | § | 62ND JUDICIAL DISTRICT |

## CHARGE OF THE COURT

**LADIES AND GENTLEMEN OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.      Do not let bias, prejudice, or sympathy play any part in your decision.

2.      Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not

---

Charge of the Court

Page 1

admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

---

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## DEFINITIONS

"Proximate cause" means that cause which, in a natural and continuous sequence, unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

"Negligence" means the failure to use ordinary care, that is, failing to do that which a person or company of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances. As to Joe Tex Xpress, Inc., "negligence" may also mean entrusting a vehicle to an unlicensed, incompetent and/or reckless driver if Joe Tex Xpress, Inc. knew or should have known that the driver was unlicensed or incompetent or reckless.

"Ordinary care" means that degree of care that would be used by a person or company of ordinary prudence under the same or similar circumstances.

## QUESTION NO. 1

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

a.    Krista Dillon          No

b.    Dennis Rayner         YES

c.    Joe Tex Xpress, Inc.   YES

Answer Question No. 2 only if you answered "Yes" to Question No. 1 as to more than one of the persons or entities named below. Otherwise, do not answer Question No. 2.

## QUESTION NO. 2

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those listed below and found by you, in your answer to Question No. 1, to have been negligent?

Assign percentages of responsibility only to those you found caused or contributed to cause the occurrence. The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The percentage of responsibility attributable to any one is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

a.  Krista Dillon                      ____0____ %

b.  Dennis Rayner                   ____60___ %

c.  Joe Tex Xpress, Inc.          ____40___ %

        Total                             ____100__ %

Answer Question No. 3 if you answered "Yes" for Dennis Rayner or Joe Tex Xpress, Inc. to Question No. 1 and answered:

1.    "No" for Krista Dillon to Question No. 1, or
2.    *50 percent* or less for Krista Dillon to Question No. 2.

Otherwise, do not answer Question No. 3.

## QUESTION NO. 3

What sum of money, if paid now in cash, would fairly and reasonably compensate <u>Krista Dillon</u> for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you may find.

Do not include any amount for any condition not resulting from the occurrence in question.

Do not include any amount for any condition existing before the occurrence in question, except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the occurrence in question.

Do not include any amount for any condition resulting from the failure, if any, of Krista Dillon to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for and treating her injuries, if any, that resulted from the occurrence in question.

Answer separately, in dollars and cents, for damages, if any.

A.    Medical Expenses

Answer in dollars and cents for damages, if any, that

(a)    Were sustained in the past:

ANSWER:    $ 395,629.76

(b)    In reasonable probability will be sustained in the future:

ANSWER:    $ 173,000.00

3011

B.   Physical Pain and Suffering

Answer in dollars and cents for damages, if any, that

(a)   Were sustained in the past:

ANSWER:   $ 102,000.00

(b)   In reasonable probability will be sustained in the future:

ANSWER:   $ 400,000.00

C.   Mental Anguish

Answer in dollars and cents for damages, if any, that

(a)   Were sustained in the past:

ANSWER:   $ 0

(b)   In reasonable probability will be sustained in the future:

ANSWER:   $ 0

D.   Physical Impairment

Answer in dollars and cents for damages, if any, that

(a)   Were sustained in the past:

ANSWER:   $ 0

(b)   In reasonable probability will be sustained in the future:

ANSWER:   $ 40,000.

E.   Disfigurement

Answer in dollars and cents for damages, if any, that

(a)   Were sustained in the past:

ANSWER:   $ 0

3012

(b)     In reasonable probability will be sustained in the future:

ANSWER:   $ _____ 0 _____

Answer Question No. 4 only if you unanimously answered "Yes" to Question No. 1 regarding Dennis Rayner. Otherwise, do not answer Question No. 4.

You are instructed that, in order to answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.

## QUESTION NO. 4:

Do you find by clear and convincing evidence that the harm to Krista Dillon resulted from gross negligence attributable to Dennis Rayner?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by a defendant:

a.    which, when viewed objectively from the standpoint of the defendant at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

b.    of which the defendant has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No":

ANSWER:          YES

3014

Answer Question No. 5 only if you unanimously answered "Yes" to Question No. 1 regarding Joe Tex Xpress, Inc. Otherwise, do not answer Question No. 5.

You are instructed that, in order to answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise, you must not answer that part of the following question.

## QUESTION NO. 5:

Do you find by clear and convincing evidence that the harm to Krista Dillon resulted from gross negligence attributable to Joe Tex Xpress, Inc.?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by a defendant:

a.      which, when viewed objectively from the standpoint of the defendant at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

b.      of which the defendant has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No:

ANSWER:                              YES

1.      When you go into the jury room to answer the questions, the first thing you will need

---

Charge of the Court                                                                                          Page 10

3015

to do is choose a presiding juror.

2. The presiding juror has these duties:

 a. have the complete charge read aloud if it will be helpful to your deliberations;

 b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

 c. give written questions or comments to the bailiff who will give them to the judge;

 d. write down the answers you agree on;

 e. get the signatures for the verdict certificate; and

 f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate:

1. You may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

 If 11 jurors agree on every answer, those 11 jurors sign the verdict.

 If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

JUDGE PRESIDING

# VERDICT CERTIFICATE FOR QUESTIONS Nos. 1-3

**Check one:**

_____ Our verdict is unanimous. All 12 of us have agreed to each and every answer. The presiding juror has signed the certificate for all 12 of us.

_____      Ester Vaughn
Signature of Presiding Juror              Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer in questions 1-3 and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer in questions 1-3 and have signed the certificate below.

| SIGNATURE | NAME PRINTED |
|---|---|
| 1. | Ester Vaughn |
| 2. | Keithon Tapley |
| 3. | Emily Davenport |
| 4. | Jeff Anderson |
| 5. | Melissa Johnson | Melissa Johnson |
| 6. | Sheri D. Kivell |
| 7. | Tommy Alexander |
| 8. | Donna L. Goins |
| 9. | Jake Phillips |
| 10. | Tamatha Warren |
| 11. | |

---

Charge of the Court              Page 12

3017

# VERDICT CERTIFICATE FOR QUESTION NO. 4

**Check one:**

_____✓_____ Our verdict is unanimous. All 12 of us have agreed to the answer in question 4. The presiding juror has signed the certificate for all 12 of us.

_____          _____
Signature of Presiding Juror                    Printed Name of Presiding Juror

Lester Vaughn

_____ Our verdict is not unanimous. Eleven of us have agreed to the answer in question 4 and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to the answer in question 4 and have signed the certificate below.

SIGNATURE                                      NAME PRINTED

1. _____          _____

2. _____          _____

3. _____          _____

4. _____          _____

5. _____          _____

6. _____          _____

7. _____          _____

8. _____          _____

9. _____          _____

10. _____          _____

11. _____          _____

---

Charge of the Court                                              Page 13

3018

# VERDICT CERTIFICATE FOR QUESTION NO. 5

**Check one:**

_____✓_____ Our verdict is unanimous. All 12 of us have agreed to the answer in question 5. The presiding juror has signed the certificate for all 12 of us.

_____          _Esker Vaughn_____
Signature of Presiding Juror                                Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to the answer in question 5 and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to the answer in question 5 and have signed the certificate below.

| | SIGNATURE | NAME PRINTED |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |
| 4. | | |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |
| 10. | | |
| 11. | | |

Appendix C

KRISTA DILLON                    §    IN THE DISTRICT COURT

§

v.                               §    OF HOPKINS COUNTY

§

DENNIS RAYNER AND                §
JOE TEX XPRESS, INC.             §    62ND JUDICIAL DISTRICT

## CHARGE OF THE COURT

**LADIES AND GENTLEMEN OF THE JURY:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. I will give you a number where others may contact you in case of an emergency.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.    Do not let bias, prejudice, or sympathy play any part in your decision.

2.    Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that

---

Charge of the Court                                                      Page 1

3020

was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

7. Do not answer questions by drawing straws or by any method of chance.

8. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

9. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

10. In discharging your responsibility on this jury, you will observe all the instructions that have been previously given to you

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

# QUESTION NO. 6

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against Dennis Rayner and awarded to Krista Dillon as exemplary damages for the conduct found in response to Question No. 4 in the previous Charge of the Court?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are –

(a)     The nature of the wrong.
(b)     The character of the conduct involved.
(c)     The degree of culpability of the wrongdoer.
(d)     The situation and sensibilities of the parties concerned.
(e)     The extent to which such conduct offends a public sense of justice and propriety.
(f)     The net worth of Dennis Rayner

Answer in dollars and cents, if any.

ANSWER:     2000.

## QUESTION NO. 7

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against Joe Tex Xpress, Inc. and awarded to Krista Dillon as exemplary damages for the conduct found in response to Question No. 5 in the previous Charge of the Court?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are –

(a)    The nature of the wrong.
(b)    The character of the conduct involved.
(c)    The degree of culpability of the wrongdoer.
(d)    The situation and sensibilities of the parties concerned.
(e)    The extent to which such conduct offends a public sense of justice and propriety.
(f)    The net worth of Joe Tex Xpress, Inc.

Answer in dollars and cents, if any.

ANSWER:    3,000,000. 00

---

## Presiding Juror:

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. have the complete charge read aloud if it will be helpful to your deliberations;

   b. preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. give written questions or comments to the bailiff who will give them to the judge;

   d. write down the answers you agree on;

   e. get the signatures for the verdict certificate; and

   f. notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

## Instructions for Signing the Verdict Certificate:

1. You must answer the questions on a vote of 12 jurors.

Do you understand these instructions? If you do not, please tell me now.

JUDGE PRESIDING

---

Charge of the Court                                        Page 5

# VERDICT CERTIFICATE FOR QUESTION NO. 6

We, the jury, have answered the above and foregoing question as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering Question No. 6

_____
Signature of Presiding Juror

_____
Lester Vaughn
Printed Name of Presiding Juror

3025

# VERDICT CERTIFICATE FOR QUESTION NO. 7

We, the jury, have answered the above and foregoing question as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering Question No. 7.

_____
Signature of Presiding Juror

_____
Printed Name of Presiding Juror

3026